In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-368 CV


____________________



SILSBEE HOSPITAL, INC. d/b/a 


COLUMBIA SILSBEE DOCTORS HOSPITAL, Appellant



V.



LONNY GEORGE, Appellee






On Appeal from the 88th District Court


Hardin County, Texas


Trial Cause No. 37,757






OPINION


 In this case, an employee of a nonsubscriber to workers' compensation insurance
voluntarily elected to participate in an employee benefit plan that provided specified benefits
in lieu of a common law remedy. The employer, Silsbee Hospital, Inc. d/b/a Columbia
Silsbee Doctors Hospital, contends that under the employee benefit plan the employee,
Lonny George, waived his common law rights to sue for personal injuries. The Hospital
raises additional errors regarding: (1) the trial court's refusal to grant it additional strikes for
certain veniremembers it challenged for cause, (2) the trial court's evidentiary rulings to
exclude evidence arguably relevant to its affirmative defenses of waiver, release and
estoppel, (3) the trial court's broad form damage submission and refusal to submit a damage
charge with segregated elements of damage, (4) the jury's arguably excessive damage award,
and, (5) the refusal of the trial court to allow it to amend its pleadings to assert the
affirmative defense of ratification.

 While descending a ladder on February 29, 1996, George was injured when the ladder
slipped and he fell. He received multiple fractures of the bones in his foot and, subsequently,
had three surgeries as a result of his injuries. A jury awarded George $1,000,000 in his suit
against the Hospital. The award consisted of $100,000 for past damages and $900,000 for
future damages. 

 Applying the rules of contract construction, as further discussed below, we hold that
the waiver George signed does not expressly apply to relieve the Hospital of its potential
liability at common law. We find the trial court erred in failing to grant additional strikes in
jury selection. We also find this error was harmful and requires us to reverse and remand.

The Waiver Agreement

 Prior to his injury, George elected to participate in an employee benefit plan and, in
doing so, waived certain rights to bring negligence suits for on-the-job injuries. On February
14, 1996, George signed a document titled "ELECTION TO PARTICIPATE IN THE
EMPLOYEE HEALTH AND SAFETY PROGRAM BENEFIT PLAN OF
COLUMBIA/HCA HEALTHCARE CORPORATION." The document (hereafter referred
to as the "waiver agreement") states, in all capital letters, "EXECUTION OF THIS
DOCUMENT INVOLVES THE WAIVER AND RELEASE OF VALUABLE LEGAL
RIGHTS." The waiver agreement further provides: By execution of this document, I hereby voluntarily elect to
participate in the Employee Health and Safety Program Benefit Plan of
Columbia/HCA Healthcare Corporation (the "Plan"). AS REQUIRED
BY THE TERMS OF THE PLAN, I, THE UNDERSIGNED,
HEREBY FREELY, IRREVOCABLY AND UNCONDITIONALLY
RELEASE, WAIVE AND AGREE NOT TO SUE UPON, ANY AND
ALL CLAIMS AND CAUSES OF ACTION, WHETHER NOW
EXISTING OR ARISING IN THE FUTURE, THAT I MAY HAVE
AGAINST COLUMBIA/HCA HEALTHCARE CORPORATION, ITS
SUBSIDIARIES, ITS OFFICERS, DIRECTORS, SHAREHOLDERS,
AGENTS AND EMPLOYEES, THAT ARISE OUT OF OR ARE
RELATED TO INJURIES OR DEATH SUSTAINED BY ME IN THE
COURSE AND SCOPE OF MY EMPLOYMENT BY
COLUMBIA/HCA HEALTHCARE CORPORATION AND ARE
CAUSED BY THE SOLE NEGLIGENCE OF COLUMBIA/HCA
HEALTHCARE CORPORATION OR THE NEGLIGENCE OF
COLUMBIA/HCA HEALTHCARE CORPORATION
CONCURRENT WITH THE NEGLIGENCE OF ANY OTHER
PERSON OR ENTITY. . . . 


 The Hospital maintains that by participating in the plan and accepting benefits (1),
George waived his right to sue the Hospital. George contends that his injury was sustained
in the course and scope of his employment with the Hospital, and not in the course and scope
of his employment with Columbia/HCA Healthcare Corporation, the parent corporation of
the Hospital. George further contends that under the express terms of the plan he waived
only his rights to sue the parent, but retained his rights to sue the Hospital, a subsidiary of
Columbia/HCA. 

 In its first issue, the Hospital asks this Court to reverse the trial court and render 
judgment in the Hospital's favor. Alternatively, the Hospital seeks reversal and remand. 
To support its rendition argument based on waiver, the Hospital relies on Lawrence v. CDB
Services, Inc., 44 S.W.3d 544, 551-53 (Tex. 2001), and Storage & Processors, Inc. v. Reyes,
134 S.W.3d 190, 191(Tex. 2004). In Lawrence, the Texas Supreme Court determined that
agreements by workers to limit their employers' liability in exchange for non-subscriber
benefit plans were not prohibited by law. Lawrence, 44 S.W.3d at 551-53 (superseded by
Tex. Lab. Code Ann. § 406.033(e) (Vernon Supp.2005) ("Any agreement by an employee
to waive a cause of action or any right described in Subsection (a) before the employee's
injury or death is void and unenforceable."). Although superseded by statute, Lawrence
remains the law for the claims asserted by George, who both signed the waiver agreement
and sustained his injury before September 1, 2001. See Reyes, 134 S.W.3d at 192.

 The Texas Supreme Court further determined that employers who enroll employees
in non-subscriber benefit plans as allowed by Lawrence must satisfy both components of the
fair notice requirements, namely, the express negligence doctrine and conspicuousness. (2) Id.
at 191. When the fair notice requirements apply, a contract must satisfy both requirements
to avoid being unenforceable as a matter of law. Id. at 192 (citing Dresser Indus., Inc. v.
Page Petroleum, Inc., 853 S.W.2d 505, 509-10 (Tex. 1993), and U.S. Rentals, Inc. v. Mundy
Serv. Corp., 901 S.W.2d 789, 792 (Tex. App.--Houston [14th Dist.] 1995, writ denied)). The
express negligence doctrine requires that the parties' intent to release an employer from
liability for its own future negligence "must be expressed in unambiguous terms within the
four corners of the release." Lawrence, 44 S.W.3d at 553.

 Relying on Victoria Bank, George maintains the document addresses only his right
to pursue claims arising from injuries he received while working as an employee of 
Columbia/HCA, the parent, and not while working as an employee of the Hospital. See
Victoria Bank & Trust Co. v. Brady, 811 S.W.2d 931, 938 (Tex. 1991) (to effectively release
a claim the releasing document must "mention" the claim). The pertinent language in the
agreement here provides that George released and waived all claims and causes of action,
including future ones, that he "may have against Columbia/HCA Healthcare Corporation [or]
its subsidiaries, . . . ." "that arise out of or are related to injuries or death sustained by
[George] in the course and scope of [his] employment by Columbia/HCA Healthcare
Corporation and are caused by the sole negligence of Columbia/HCA Healthcare
Corporation or the negligence of Columbia/HCA Healthcare Corporation concurrent with the
negligence of any other person or entity." (Emphasis added) While the Hospital concedes
that the release and waiver is written in terms of George's being an employee of
Columbia/HCA rather than the Hospital, it argues that the summary plan description and
surrounding circumstances make clear the intent that the Hospital is included in the term
"employer."

 In our review of the waiver agreement, we utilize the rules of contract construction
applicable to indemnity agreements and releases. See Associated Indem. Corp. v. CAT
Contracting, Inc., 964 S.W.2d 276, 284 (Tex.1998); see also Fisk Elec. Co. v. Constructors
& Associates, Inc., 888 S.W.2d 813, 814 (Tex. 1994). Under Ethyl Corp. v. Daniel Constr.
Co., 725 S.W.2d 705 (Tex. 1987), the Texas Supreme Court held the express negligence
doctrine, a rule of contract construction, requires that "the intent of the parties must be
specifically stated within the four corners of the contract." Id. at 708; see also Fisk, 888
S.W.2d at 814-15. The purpose of the express negligence rule is "to require scriveners to
make it clear when the intent of the parties is to exculpate an indemnitee for the indemnitee's
own negligence." Atlantic Richfield Co. v. Petroleum Personnel, Inc., 768 S.W.2d 724, 726
(Tex. 1989). "Either the indemnity agreement is clear and enforceable or it is not." Fisk, 888
S.W.2d at 815. 

 In addition to the express negligence rule, we also consider other rules of contract
construction in construing nonsubscriber agreements. See Associated Indem. Corp., 964
S.W.2d at 284; see also Fisk, 888 S.W.2d at 814. "Deciding whether a contract is ambiguous
is a question of law for the court." J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229
(Tex. 2003). A contract is unambiguous if it can be given a definite or certain legal meaning. 
DeWitt County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999). 

 The agreement George signed is not ambiguous as it can be given a definite legal
meaning. The clear and unambiguous language found within the four corners of the
document here addresses only injuries arising out of George's employment by Columbia/HCA
Healthcare Corporation. It is not disputed that George's injuries arose out of his
employment by the Hospital, which, although a subsidiary of Columbia/HCA, is a distinct
legal entity under Texas law. BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789,
798 (Tex. 2002); Bell Oil & Gas Co. v. Allied Chem. Corp., 431 S.W.2d 336, 339-41 (Tex.
1968). 

 The Hospital argues that the agreement it drafted, if interpreted as limited to claims
arising out of the employment by Columbia/HCA, would be absurd. However, we note that
an employee under Texas law may move into, and out of, his employer/employee
relationship with one entity and into an employer/employee relationship with another entity
depending upon which entity controls the details of his work at the time of the injury. See
Producers Chem. Co. v. McKay, 366 S.W.2d 220, 225-26 (Tex. 1963)(whether general
employees of one employer become borrowed employees of another is often a difficult
question). Additionally, a landlord may have potential liability for accidents that occur on
premises over which it has some control. Exxon Corp. v. Tidwell, 867 S.W.2d 19, 21 (Tex.
1993) (control over security and safety on leased premises may be fact issue regarding
potential liability to tenant's employee injured on leased premises). This is not to say that
there was a fact issue here on whether the Hospital or Columbia/HCA controlled George's
work, or that Columbia/HCA leased the premises where George suffered his injury, but just
to observe that Columbia/HCA, as the parent corporation, might have had its reasons to want
a waiver from employees such as George. Thus, we conclude that Columbia/HCA could
have an interest, separate and apart from the interest of the Hospital, making a waiver of
common law claims against it desirable. 

 We further note that in the Bill of Exceptions the Hospital presented affidavits of the
Risk Manager for Silsbee Hospital, Inc., Alice O'Quin, and the Vice President - Legal &
Corporate Secretary for Columbia/HCA Healthcare Corporation, John Franck II. However, 
there was no testimony from either of them explaining the reason the waiver agreement
limited the waiver to injuries arising from employment by Columbia/HCA. We also note
there was no testimony from any witness at trial, or testimony offered and excluded by the
trial court, explaining why the waiver agreement limited the injuries released to those arising
out of employment by Columbia/HCA, and did not expressly extend to include injuries
arising out of employment by its subsidiaries. There was no explanation by any of the
witnesses establishing who owned the premises where George's accident occurred, who
owned the ladder involved in George's accident, or the degree to which Columbia/HCA
controlled safety procedures in place on the premises. 

 The Hospital did introduce a document titled Columbia/HCA "Employee Guide to
Health and Safety" containing a section on safety with ladders, indicating there may have
been some direction by the parent over the subsidiary regarding ladder safety. Kenny
Gibson, the Hospital's maintenance supervisor, testified that management communicated to
employees the safety concepts in the Columbia/HCA safety guide prior to the Hospital's
promulgating its own safety rules. In summary, based on the record in this case we cannot
imply that there would be no purpose in Columbia/HCA's desire to benefit from a waiver.

 Therefore, under the facts of this case, and applying the express negligence rule as
well as other rules of contract construction to the waiver agreement, we decline to imply that
the drafters of the waiver agreement intended to include the Hospital as a party against whom
George waived his common law remedies where the waiver agreement does not expressly
so provide. Therefore, we decline the Hospital's request that we reverse the trial court's
judgment and render judgment in favor of the Hospital. Issue one is overruled. 

Ratification, Release, Waiver and Estoppel

 Issues two, three, and seven concern the Hospital's affirmative defenses. In issues
two and three, the Hospital complains that the trial court erred in denying its request to admit
evidence it contends raises a fact issue regarding its affirmative defenses, namely, waiver,
release, and estoppel. In issue seven, the Hospital complains that the trial court erred in
refusing the Hospital's requested trial amendment to assert ratification as an affirmative
defense. 

 With respect to estoppel, the Hospital argues George's acceptance of payments,
totaling $78,167.24, requires the enforcement of an agreement (albeit not the one expressly
agreed to in the written contract) that George would not sue the Hospital at common law. 
The Hospital contends that by accepting voluntary payments for medical expenses and lost
wages, George ratified the waiver agreement. At the outset, we note that George signed the
waiver agreement and never disputed that he was bound by the written terms of the
agreement.

 Under Texas law, a tortfeasor may voluntarily pay the person it injures, and the
payment cannot then be asserted as an admission that the tortfeasor was negligent. See Tex.
R. Evid. 409. Therefore, the payments to George for medical and lost wages, and George's
acceptance of them, do not raise evidence sufficient to prohibit George from enforcing the
terms of the written agreement. The only case the Hospital cites, Miller v. Kennedy &
Minshew, Prof'l Corp., 142 S.W.3d 325 (Tex. App. -- Fort Worth 2003, pet. denied), is not
on point. Instead, Miller deals with whether a lawyer's client, who refused to pay attorney's
fees under a retainer fee agreement, ratified his attorney's engaging in unauthorized acts
when, with full knowledge of his attorney's unauthorized acts, the client subsequently
accepted the benefits of the attorney's services under the fee agreement. See Miller, 142
S.W.3d at 330. Other than citing the case for the general proposition that acceptance of
benefits under a contract can, in some circumstances, prohibit a party from disavowing a
contract, nowhere does the Hospital explain how Miller would apply under the facts and
circumstances in this case. No other cases on estoppel are cited. 

 The Hospital also asserts that George ratified the understanding that the Hospital was
released. However, the Hospital did not plead its affirmative defense of ratification as
required under Rule 94 of the Texas Rules of Civil Procedure. Thus, the Hospital waived its
ratification defense. See Land Title Co. of Dallas, Inc. v. F. M. Stigler, Inc., 609 S.W.2d 754,
756 (Tex. 1980). 

 In issue seven, the Hospital asserts the trial court erred in not granting leave for the 
Hospital to amend its pleadings to assert the ratification defense. A trial court's order
granting or denying a request for a trial amendment is reviewed under an abuse of discretion
standard. State Bar of Texas v. Kilpatrick, 874 S.W.2d 656, 658 (Tex. 1994). Under Texas
Rule of Civil Procedure 66, a trial court is required to freely grant the request unless "(1) the
opposing party presents evidence of surprise or prejudice, or (2) the amendment asserts a new
cause of action or defense, and thus is prejudicial on its face." Id. at 658. When the record
shows a lack of diligence in bringing the reshaped cause before the court and when the matter
pleaded appears to have been known by the party seeking to amend and is not based on any
newly discovered facts, the court does not abuse its discretion in refusing to allow the
amendment. See Trailways, Inc. v. Clark, 794 S.W.2d 479, 492 (Tex. App.-- Corpus Christi
1990, writ denied). 

 The Hospital indicates that it argued ratification as a defense in support of its Motion
for Summary Judgment when it filed its Supplemental Argument and Authority in Support
of Its Motion for Summary Judgment on July 16, 2001. The jury trial in this case did not
occur until 2004. It is clear from the record that the Hospital was aware of its contention that
George's conduct allegedly resulted in a ratification to waive his claims against the Hospital
long before the trial.

 When the trial court denies leave to file an amended pleading injecting a new
substantive defense, the burden shifts to the party who offered the amended pleading to
clearly demonstrate on appeal that the trial court abused its discretion. Hardin v. Hardin, 597
S.W.2d 347, 349 (Tex.1980). The Hospital contends that its ratification defense was tried
by consent, but fails to include any record references showing when such evidence was
presented to the jury. Thus, the Hospital failed to clearly demonstrate the trial court abused
its discretion in failing to grant the requested trial amendment to assert ratification when the
terms agreed to in writing were in fact enforced at trial. (3)

 With respect to its waiver and release defenses, the Hospital asserts that George had
actual knowledge that by executing the waiver he was waiving negligence claims against the
Hospital, and argues that George's actual knowledge makes the waiver effective to protect
the Hospital. For this proposition, the Hospital relies on Reyes, which states that "if both
contracting parties have actual knowledge of the plan's terms, an agreement can be enforced
even if the fair notice requirements were not satisfied." Reyes, 134 S.W.3d at 192. 

 As discussed above, the Hospital's Bill of Exceptions offered no testimony regarding
the Hospital's understanding of the plan's terms; instead it offered only George's testimony
about his understanding. The affidavits of Mr. Franck II, and Ms. O'Quin, offered by the
Hospital, contain no evidence regarding the Hospital's understanding of how the waiver
applied when the injury arose in the course and scope of an injury to a Hospital employee. 
 We have held that the contract was not ambiguous, and is therefore construed under
the "four corners" rule. Although the Hospital attempted to offer George's understanding
of the waiver agreement into evidence, and this evidence was excluded, we note that
George's testimony of his understanding of the waiver agreement would have injected
testimony inconsistent with the express terms of the written agreement in violation of the
parol evidence rule, which is a rule of substantive law. 

 When the parties have made an unambiguous written agreement with respect to a
particular subject matter, the parol evidence rule prohibits the presentation of extrinsic
evidence to vary or contradict the terms of a written instrument. See Friendswood
Development Co. v. McDade + Co., 926 S.W.2d 280, 283 (Tex. 1996); Hubacek v. Ennis
State Bank, 159 Tex. 166, 317 S.W.2d 30, 31 (1958); Muhm v. Davis, 580 S.W.2d 98, 101
(Tex. Civ. App. -- Houston [1st Dist.] 1979, writ ref'd n.r.e.). No party pled or contends that
the written waiver agreement is ambiguous. As a result, it was not error for the trial court
to deny the offer of George's understanding of the release and waiver agreement. (4)
 Issues
two, three and seven are overruled.

Error in Jury Selection

 In Issue four, the Hospital complains the trial court erred in failing to strike four
veniremembers for cause -- Ms. Hazleton, Ms. Phillips, Mr. Stevenson, and Mr. Troup. 
During voir dire, Ms. Hazleton indicated that her feelings about all that Mr. George had been
through would cause her to "give him money even in a situation where he did not carry the
burden of proof that the Court [asked her] to look at." Ms. Phillips indicated "I would have
trouble not giving him money -- something, anyway," even if George failed to carry his
burden of proof. Mr. Stevenson stated that even if the evidence showed no negligence he
would not be able to award no money. Mr. Troup stated that he knew Mr. George and Mr.
George's wife, Wendy, and that he did not think that knowing them would cause him to lean
either way. 

 The Hospital's attorney used four of his peremptory strikes on these veniremembers, 
and used his other two peremptory strikes as well. The Hospital's attorney requested the trial
court allow the Hospital four additional strikes, but the trial court denied the request. At that
point, the Hospital's attorney made a record that had he been allowed four additional strikes,
he would have stricken Mr. Richardson, Ms. Goins, Mr. Anders, and Mr. Dausel. Mr.
Richardson, Ms. Goins, Mr. Anders and Mr. Dausel joined six of the other jurors in the
issues found against the Hospital, resulting in the trial court's rendering judgment against the
Hospital. 

 The Hospital used all six of its peremptory strikes provided under the rules. Tex. R.
Civ. P. 233. There is no requirement that a party identify the reasons the remaining
veniremembers that it would have stricken were objectionable. Cortez v. HCCI-San Antonio,
Inc., 2005 WL 563122, at *2 (Tex. Mar.11, 2005) (not yet released for publication, subject
to revision or withdrawal). The Hospital properly preserved error by using its peremptory
challenges against veniremembers it requested the trial court strike for cause, exhausting its
other peremptory challenges, and notifying the trial court that other veniremembers
objectionable to it remained on the jury panel. Hallett v. Houston Northwest Med. Ctr., 689
S.W.2d 888, 890 (Tex. 1985). 

 Because the error was preserved, we analyze the information provided by the four
veniremembers the trial court refused to strike for cause to evaluate whether any of the four
were disqualified to serve as a matter of law. We consider the entire examination, and not
just the answers of these four veniremembers that arguably reflect bias. Cortez, 2005 WL
563122, at*4. 

 Under Texas law, a prospective juror who has a bias or prejudice in favor of or against
a party is disqualified to serve on the jury. See Tex. Gov't Code Ann. § 62.105(4) (Vernon
1998); Shepherd v. Ledford, 962 S.W.2d 28, 34 (Tex. 1998) (error in failing to strike a juror
who stated she could not be fair to the defendant because of the results of medical treatment
to her father). On the other hand, an expression of a bias that is subject to more than one
interpretation or is uncertain, referred to as equivocal bias, is not a ground for
disqualification. Cortez, 2005 WL 563122, at*1, *4 (no error where veniremember stated
he had a bias against lawsuits but he was willing to try to listen and decide it on the law and
the evidence); Goode v. Shoukfeh, 943 S.W.2d 441, 452 n.4, 453 (Tex. 1997) (no error where
veniremember stated that although he leaned a little toward the defendant based upon what
he had heard so far that he could make a decision based on the evidence that came from the
witness stand). 

 The purpose of jury selection is "to provide a jury composed of persons who are not
biased or prejudiced. The object is an impartial jury." Hallett, 689 S.W.2d at 889. Bias has
been defined as "an inclination toward one side of an issue rather than to the other, but to
disqualify, it must appear that the state of mind of the juror leads to the natural inference that
he will not or did not act with impartiality." Compton v. Henrie, 364 S.W.2d 179, 182 (Tex.
1963). In Compton, the Supreme Court held that a juror's statements that he did not believe
in lawsuits, and had not brought a suit as a result of an accident he was in, were insufficient
to show bias as a matter of law. Id. at 181-82.

 In this case, as is true in most trials, many of the jurors expressed their views in
response to the lawyers' questions during voir dire. The trial judge heard the responses of
the individual veniremembers and the requests of the lawyers, and disqualified a number of
veniremembers who expressed bias. In fact, the trial judge struck fourteen of the
veniremembers for cause, and we note that the vast majority of these strikes were at the
request of the attorney for the Hospital. 

 With respect to the veniremembers the trial court refused to strike, we imply that the
trial court ruled that they were not biased or prejudiced. Swap Shop v. Fortune, 365 S.W.2d
151, 154 (Tex. 1963). We agree the trial court ruled properly in refusing to strike Mr. Troup,
who acknowledged that his acquaintance with Mr. and Mrs. George would not play a role
in his service as a juror. Mr. Troup was not disqualified as a matter of law. See Swap Shop,
365 S.W.2d at 153-54 (defendant's being father-in-law of juror's friend and hunting
companion insufficient to show bias as a matter of law when questioning indicated juror
would follow court's instructions). 

 However, the trial court's rulings and implicit finding of no disqualification regarding
the biases expressed by jurors Hazleton, Phillips, and Stevenson are more troublesome. 
Hazleton and Stevenson indicated without equivocation that they would favor George in this
case with an award even if he failed to prove his case. Hazleton stated in voir dire that she
would give Mr. George money even if plaintiff failed to carry his burden of proof. Stevenson
acknowledged that if at the end the evidence showed no negligence, he would still not be
able to award no money. Hazleton and Stevenson's statements are unequivocal, and there
is nothing in the record indicating that either would try to follow the instructions of the trial
court. 

 Phillips, on the other hand, indicated an equivocal bias regarding awarding money
despite George's failure to carry his burden of proof when she acknowledged that she "might
have trouble", and then went further and stated that she "would have trouble not giving him
money--something, anyway." We observe that Phillips's statements, although subjecting her
to the trial court's discretion to disqualify her for cause, remain susceptible to the
interpretation that although she would have trouble reaching a verdict that awarded no money
to George, she still had the capacity to follow the instructions and do so if required by the
court's instructions. Phillips's statements about having "trouble," although a close question,
are not in the same category as the unequivocal statements of Hazleton and Stevenson. 

 We hold that Hazleton and Stevenson expressed an unequivocal bias in George's
favor because both tacitly indicated they would disregard instructions by the trial court on
the burden of proof, and there was no indication that they would try to follow the trial court's
instructions. The trial court had no discretion to refuse to strike them for cause. See
Shepherd, 962 S.W.2d at 34. As a result, we hold that it was error for the trial judge to refuse
the Hospital's request to strike veniremembers Hazleton and Stevenson for bias. See Tex.
Gov't Code Ann. § 62.105(4) (Vernon 1998). 

 With respect to veniremember Phillips, it was within the trial court's discretion to
leave her on the jury on the record made of her potential bias in this case. The trial court did
not err in denying the Hospital's request to strike her. See Glenn v. Abrams/Williams Bros.,
836 S.W.2d 779, 783 (Tex. App. -- Houston [14th Dist.] 1992, writ denied).

 Our holding under the voir dire conducted in this case is distinguished from those
conducted in Cortez, Goode, and Swap Shop in that the veniremembers in these cases stated
they could set their views aside and decide the cases based upon the evidence presented
them. No similar inquiry occurred in the voir dire under review here.

 Harm is presumed where other objectionable jurors made the jury by virtue of the
failure to strike the disqualified jurors. Cortez, 2005 WL 563122, at *2. Harmful error in
jury selection requires us to reverse and remand the case for a new trial. Shepherd, 962
S.W.2d at 34. 

Damages Submission

 In issue five and six, the Hospital complains that the trial court gave the jury a global
charge that segregated only the past from the future damages, and failed to segregate certain
future damages such as future medical expenses from other future damages such as future
pain and suffering. In addition, the Hospital complains that the damage award was excessive. 
In light of our ruling on issue four, we need not reach issues five or six. (5) 

 Accordingly, we reverse the trial court's judgment and remand this cause for
proceedings consistent with this opinion.

 REVERSED AND REMANDED.


 ___________________________

 HOLLIS HORTON

 Justice



Submitted on February 24, 2005

Opinion Delivered April 28, 2005

Before Gaultney, Kreger and Horton, JJ.




















1. Approximately $78,000 in plan benefits were paid to George as a result of his
injuries. 
2. The conspicuousness requirement is not an issue in this case.
3. We observe that, in the trial court and on appeal, George never denied or disputed
that he signed the written agreement or that he was bound by its terms. Rather, the dispute
at trial and on appeal is whether the waiver George signed protects both the Hospital and
Columbia/HCA. 
4. We further note that Reyes is distinguishable from this case. In Reyes, the employer
contested the application of the fair notice requirements, but also conceded that if the
conspicuousness requirement applied, then the waiver signed by the employee was
inconspicuous. The appellate court remanded the cause for a fact determination of whether
the employee had actual knowledge of the terms of the plan. Reyes, 134 S.W.3d at 193. 
Reyes did not specifically apply the "actual knowledge" exception to the express negligence
requirement. Id. at 192-94. Further, as support for applying the actual notice exception, 
Reyes cites Dresser, 853 S.W.2d at 505 (which applies "actual notice" to the
conspicuousness requirement) and Dresser cites Cate v. Dover Corp., 790 S.W.2d 559, 561
(Tex.1990)(holding inconspicuous written disclaimer to be unenforceable absent actual
knowledge of the disclaimer). The Hospital does not direct us to any case applying the
"actual knowledge" exception to avoid an employee's recovery where the pertinent document
fails to comply with the express negligence requirement. And finally, we note that Reyes
does not overrule Ethyl, which established the "four corners" rule. Reyes, 134 S.W.3d at
192-94; Ethyl, 725 S.W.2d at 707-08. 

5. Nevertheless, we note that Texas Rule of Appellate Procedure 44.1(a)(2) allows an
appellate court to reverse where the trial court's error "probably prevented the appellant from
properly presenting the case to the court of appeals." Id. The Texas Pattern Jury Charge
states:


 Broad-form submission of multiple elements of damages may lead to harmful
error if there is a proper objection raising insufficiency of the evidence to
support one or more of the elements submitted. Harris County v. Smith, 96
S.W.3d 230 (Tex. 2002). If there is any question about the sufficiency of the
evidence to support one or more of the elements, the Committee recommends
that the elements of damages be separately submitted . . . .


Comm. On Pattern Jury Charges, State Bar Of Tex., Texas Pattern Jury Charges-General Negligence PJC 8.2 cmt. (2003) (emphasis added). "[A]sking the jury to record
its verdict as to each element of damages when there is doubt as to the legal sufficiency of
the evidence will permit the losing party to preserve error without complicating the charge
or the jury's deliberations." Smith, 96 S.W.3d at 236.