Jesus M. CORTEZ on Behalf of the ESTATE OF Carmen PUENTES, Deceased, Petitioner,

v.

HCCI–SAN ANTONIO, INC. d/b/a Alta Vista Nursing Center, Respondent.

No. 04–0181.

Supreme Court of Texas.

Argued Dec. 2, 2004.

Decided March 11, 2005.

Thomas S. Hornbuckle, Stephen S. Hornbuckle, Hornbuckle Firm, Houston, Jesse Thomas Rhodes, Lyons & Rhodes, San Antonio, Keith C. Livesay, McAllen, for petitioner.

Lori D. Proctor, Proctor & Nagorny, P.C., Houston, for respondent HCCI–San Antonio, Inc.

Alvin Laser, Boston & Hughes, Houston, for respondent Jerry Tristan.

Misty Ann Farris, Baron & Budd, P.C., Dallas, for amicus curiae Tex–Abota, Inc.

Justice MEDINA delivered the opinion of the Court.

This case presents two issues: whether the trial court abused its discretion in denying a challenge to an equivocating veniremember for cause, and whether an objection to the denial was timely to preserve error. The court of appeals held that error was preserved and that the trial court did not abuse its discretion. 131 S.W.3d 113. We affirm the judgment of the court of appeals.

I

Carmen Puentes, a nursing home resident, sued HCCI–San Antonio ("HCCI"), Altman Nursing, and Jerry Tristan for negligence, gross negligence, assault, penal code violations, and intentional infliction of emotional distress related to a fall and allegations of mistreatment at the Alta Vista Nursing Center, a nursing home HCCI had purchased from Altman four months earlier. Puentes died while the

suit was pending, and her heir Jesus Cortez pursued the claim.

During voir dire, counsel questioned veniremember Snider, who had handled automobile claims as an insurance adjuster. Snider said that his experience might give him "preconceived notions." "I would feel bias," he said, "but I mean, I can't answer anything for certain." When the trial judge asked him to explain his bias, he said that he had seen "lawsuit abuse ... so many times." He said that "in a way," the defendant was "starting out ahead," and explained:

> Basically—and I mean nothing against their case, it's just that we see so many of those. It's just like, well, I don't know if it's real or not. And this type [of] case I'm not familiar with whatsoever, so that's not a bias I should have. It's just there.

Upon further questioning, he agreed that at times when he evaluated automobile claims, he found that they had merit, and that he was "willing to try" to listen to the case and decide it on the law and the evidence. Cortez challenged Snider, arguing that he had demonstrated bias, but the trial court denied the challenge. Cortez therefore had to use his last peremptory challenge to strike Snider, and veniremember 7 was empaneled. Cortez never challenged veniremember 7 for cause, and never stated why he found 7 objectionable, but maintains that he would have struck 7 had he been able.

The jury returned a $9 million verdict against the defendants, but after reduction for settlement credits and the jury's apportionment of fault, the trial court rendered judgment against HCCI and Tristan for $87,869.36 in actual damages, and against Tristan for $250,000 in exemplary damages. Cortez, unsatisfied with the judgment, refused tender from HCCI and filed a motion for a new trial, which was denied.

Cortez appealed the judgments against HCCI and Tristan, on the ground that veniremember Snider should have been dismissed for cause. The court of appeals affirmed. 131 S.W.3d 113. We granted Cortez's petition for review, and we affirm the judgment of the court of appeals.

## II

■ HCCI and Tristan claim that Cortez failed to preserve error by timely notifying the trial court that he would be harmed by having to use his last peremptory strike on Snider. In civil suits in Texas district courts, each side has six peremptory challenges—more than litigants in most other states.[1] Tex.R. Civ. P. 233. When a challenge for cause is denied, that error can be corrected by striking the veniremember peremptorily. Thus, the error is only harmful if this peremptory challenge would have been used on another objectionable veniremember.

■ Accordingly, in *Hallett v. Houston Northwest Medical Center*, we held that to preserve error when a challenge for cause is denied, a party must use a peremptory challenge against the veniremember involved, exhaust its remaining challenges, and notify the trial court that a specific objectionable veniremember will remain on

---

1. Of the 34 states utilizing twelve jurors on civil cases, 24 allow 4 strikes per side or fewer, 7 (including Texas) allow 6 strikes per side (Alabama, California, Georgia, Louisiana, New Jersey, Texas, and Vermont), 2 allow 5 strikes per side (New York and New Mexico), and 1 (North Carolina) allows 8 strikes per side. *See* U.S. Department of Justice: Bureau of Justice Statistics, State Court Organization 1998 at 273 (1998); *see* also ABA Standards Relating to Juror Use and Management, Standard 9 (recommending three strikes per side in civil cases tried to twelve-member juries).

the jury list. 689 S.W.2d 888, 890 (Tex. 1985). This ensures that "the court is made aware that objectionable jurors will be chosen" while there is still time "to determine if the party was in fact forced to take objectionable jurors." *Id.* Our sister court applies the same test, adding that a trial court may cure the objection by granting an extra peremptory challenge. *Escamilla v. State,* 143 S.W.3d 814, 821 (Tex.Crim.App.2004) (holding error in denying challenge for cause is harmful only if party (1) strikes that veniremember peremptorily, (2) exhausts peremptory strikes, (3) requests additional strikes, and if refused (4) identifies objectionable juror remaining on venire).

■ Cortez's notice served this purpose, if barely. While it is unclear whether Cortez gave his notice to the trial court before or after he delivered his strike list, it does appear that the two events were roughly contemporaneous. More importantly, notice was given before the jury was seated, and the trial court stated on the record "it's preserved." We therefore hold that error was preserved.

■ Nor do we find Cortez waived error by failing to state why veniremember 7 was objectionable. *See Wolfe v. State,* 147 Tex.Crim. 62, 178 S.W.2d 274, 281 (1944) (holding that if a challenge for cause is improperly denied, the accused need not state why the identified juror left on venire was objectionable). Peremptory challenges normally require no reason. Tex.R. Civ. P. 232. While an "objectionable" veniremember could be picked at random, the objecting party must do so before knowing who the opposing party will strike or who the actual jurors will be. If it "guesses" wrong, any error is harmless; as our sister court recently noted, if the opposing party or the court agree to remove this veniremember, the objecting party does not get to object again to the

veniremember who will be seated instead. *Escamilla,* 143 S.W.3d at 821.

■ HCCI and Tristan also contend that any error was harmless. We disagree. The fact the Cortez prevailed at trial is not relevant, because we held in *Hallett* that "harm occurs" when "the party uses all of his peremptory challenges and is thus prevented from striking other objectionable jurors from the list because he has no additional peremptory challenges." 689 S.W.2d at 890. No one except the jurors themselves knows exactly what transpires in the jury room; we know only the verdict. We held in *Crown Life Insurance Company v. Casteel* that when a jury bases its finding on an instruction that "commingles invalid theories of liability with valid theories," we do not hold the error harmless because the most that a reviewing court can say is that the verdict might have been reached on a valid theory. 22 S.W.3d 378, 388 (Tex.2000). Here, we do not know why veniremember 7 was objectionable. But as in *Casteel,* we cannot know for certain that his inclusion did not affect the verdict, so we presume harm. *See Hallett,* 689 S.W.2d at 890. In *Excel Corp. v. Apodaca,* the court of appeals held that error was harmless when an objectionable juror did not sign the verdict because the verdict still had the required number of signatories. To the extent this holding is inconsistent with our conclusions today, we disapprove it. 51 S.W.3d 686, 693 (Tex.App.-Amarillo 2001), *rev'd on other grounds,* 81 S.W.3d 817 (Tex.2002).

### III

■ Cortez next argues, citing several court of appeals opinions, that veniremembers cannot be "rehabilitated"—that once a veniremember has expressed "bias," further questioning is not permitted and the veniremember must be ex-

cused.[2] We disagree that there is such a rule, and to the extent these decisions conflict with our opinion here, we disapprove those cases.

■ As a preliminary matter, we must define what we mean by "rehabilitation." We agree that if the record, taken as a whole, clearly shows that a veniremember was materially biased, his or her ultimate recantation of that bias at the prodding of counsel will normally be insufficient to prevent the veniremember's disqualification. But what courts most often mean by "rehabilitation" is further questioning of a veniremember who expressed an apparent bias. And there is no special rule that applies to this type of "rehabilitation" but not to other forms of voir dire examination. This Court has used the term only once in connection with voir dire and then with apparent approval. *See Goode v. Shoukfeh,* 943 S.W.2d 441, 452 n. 4, 453 (Tex.1997) (noting defense counsel "attempted to rehabilitate" veniremember and affirming trial court's denial of challenge for cause). Similarly, our sister court has shown no special disapproval of rehabilitated veniremembers. Thus, the length and effect of efforts to rehabilitate veniremembers are governed by the same rules that apply to all of voir dire.

■ Of course, the rules of civil procedure contain no rule on voir dire, but a few can be gathered from case law. Among these are that voir dire examination is largely within the sound discretion of the trial judge and that broad latitude is allowed for examination. *Babcock v. N.W. Memorial Hosp.,* 767 S.W.2d 705, 709 (Tex.1989). Both of these principles are completely inconsistent with the assertion that voir dire must stop at the moment a veniremember gives any answer that might be disqualifying. Certainly, just as trial judges may exclude "needless presentation of cumulative evidence," Tex.R. Evid. 403, they may place reasonable limits on questioning that is duplicative or a waste of time.[3] But whether further questioning would be a waste of time may depend on factors that may not appear in the record, such as a veniremember's tone and demeanor. As in any other part of voir dire, the proper stopping point in efforts to rehabilitate a veniremember must be left to the sound discretion of the trial court.

■ At the same time, trial judges must not be too hasty in cutting off examination that may yet prove fruitful. Statements of partiality may be the result of inappropriate leading questions, confusion, misunderstanding, ignorance of the law, or merely "loose words spoken in warm debate." *Compton v. Henrie,* 364 S.W.2d 179, 182 (Tex.1963); *see also Mines v. State,* 852 S.W.2d 941, 945 n. 7 (Tex.Crim. App.1992) (noting that a veniremember was rehabilitated despite unequivocal answer as further questioning showed she

---

**2.** *See State v. Dick,* 69 S.W.3d 612, 620 (Tex. App.-Tyler 2001, no pet.); *White v. Dennison,* 752 S.W.2d 714, 718 (Tex.App.-Dallas 1988, writ denied); *Gum v. Schaefer,* 683 S.W.2d 803, 808 (Tex.App.-Corpus Christi 1984, no writ); *Erwin v. Consolvo,* 521 S.W.2d 643, 646 (Tex.Civ.App.-Fort Worth 1975, no writ); *Carpenter v. Wyatt Constr. Co.,* 501 S.W.2d 748, 750 (Tex.Civ.App.-Houston [14th Dist.] 1973, writ ref'd n.r.e.); *Lumbermen's Ins. Corp. v. Goodman,* 304 S.W.2d 139, 145 (Tex. Civ.App.-Beaumont 1957, writ ref'd n.r.e.).

**3.** *See Dickson v. Burlington N. R.R.,* 730 S.W.2d 82, 85 (Tex.App.-Fort Worth 1987, writ ref'd n.r.e.); *Gulf States Util. Co. v. Reed,* 659 S.W.2d 849, 855 (Tex.App.-Houston [14th Dist.] 1983, writ ref'd n.r.e.); *see also Rios v. State,* 122 S.W.3d 194, 197 (Tex.Crim.App. 2003) (providing trial courts may prohibit improper questions and place reasonable time limits on voir dire); *Howard v. State,* 941 S.W.2d 102, 108 (Tex.Crim.App.1996) (holding trial court may restrict confusing or misleading voir dire questions).

had been confused). If a veniremember expresses what appears to be bias, we see no reason to categorically prohibit further questioning that might show just the opposite or at least clarify the statement. *See, e.g., Glenn v. Abrams/Williams Bros.*, 836 S.W.2d 779, 783 (Tex.App.-Houston [14th Dist.] 1992, writ denied). If the initial apparent bias is genuine, further questioning should only reinforce that perception; if it is not, further questioning may prevent an impartial veniremember from being disqualified by mistake. Similarly, we do not believe the discretion accorded trial judges in ruling on challenges for cause is arbitrarily limited in cases involving rehabilitation. Because trial judges are actually present during voir dire, they are "in a better position ... to evaluate the juror's sincerity and his capacity for fairness and impartiality." *Swap Shop v. Fortune*, 365 S.W.2d 151, 154 (Tex.1963). Therefore, trial courts exercise discretion in deciding whether to strike veniremembers for cause when bias or prejudice is not established as a matter of law, and there is error only if that discretion is abused. *See Malone v. Foster*, 977 S.W.2d 562, 564 (Tex.1998).

In reviewing such decisions, we must consider the entire examination, not just answers that favor one litigant or the other. *Compton*, 364 S.W.2d at 182 (finding no bias based on an "examination of the entire record"); *see also Cannady v. State*, 11 S.W.3d 205, 210 (Tex.Crim.App.2000) (considering totality of veniremember's examination). For example, in *Goode v. Shoukfeh*, a veniremember admitted he had "a slight bias," was "leaning a little" toward the defendant, and the plaintiff was "starting off a little bit behind." 943 S.W.2d at 453 n. 4. Nevertheless, we affirmed the trial court's refusal to strike the veniremember for cause based on the veniremember's explanation that "both sides ... are pretty even," that his "bias" was only because the defendant's explana-

tion of the evidence "was just a little more clear in [his] mind[.]" The veniremember explained, "I can make my decision on the evidence that comes from the witness stand.... I have not made a decision just from what you two have said." *Id.* Clearly, neither trial nor appellate courts are required to consider challenges for cause based on only one part of a veniremember's responses.

■ Nor do challenges for cause turn on the use of "magic words." Cortez argues, and we do not disagree, that veniremembers may be disqualified even if they say they can be "fair and impartial," so long as the rest of the record shows they cannot. By the same token, veniremembers are not necessarily disqualified when they confess "bias," so long as the rest of the record shows that is not the case.

■ Here, the challenged veniremember admitted having a better understanding of the defendant's side, having worked as an insurance adjuster. Nevertheless, his answers to the trial judge's questions revealed that any initial apparent bias he expressed was actually against lawsuit abuse. Like the veniremember in *Goode*, Snider said he was willing to listen to all the evidence and to withhold judgment until the entire case had been presented. He never indicated any inability to find for Cortez, if Cortez proved his case. More significantly, he said he was "willing to try" to make his decision based on the evidence and the law. That is all we can ask of any juror.

Many potential jurors have some sort of life experience that might impact their view of a case; we do not ask them to leave their knowledge and experience behind, but only to approach the evidence with an impartial and open mind. The veniremember here expressed willingness

to do that. Any bias he did express was equivocal at most, which is not grounds for disqualification. *See Goode*, 943 S.W.2d at 453 n. 4; *Sullemon v. U.S. Fid. & Guar. Co.*, 734 S.W.2d 10, 15 (Tex.App.-Dallas 1987, no writ). Snider was therefore not biased as a matter of law, and it was within the trial court's discretion to refuse to strike him.

### IV

■■■■■■ Finally, we address the veniremember's affirmative response to a question by Cortez's counsel that the defendants "would be starting out ahead" of the other party before he even got into the jury box. This cannot be grounds for disqualification. As we long ago stated, "bias and prejudice form a trait common in all men," but to disqualify a veniremember "certain degrees thereof must exist." *Compton*, 364 S.W.2d at 181–82. "Bias, in its usual meaning, is an inclination toward one side of an issue . . . but to disqualify, it must appear that the state of mind of the juror leads to the natural inference that he will not or did not *act* with impartiality." *Id.* at 182 (emphasis added). Accordingly, the relevant inquiry is not where jurors *start* but where they are likely to *end*. An initial "leaning" is not disqualifying if it represents skepticism rather than an unshakeable conviction. *See Feldman v. State*, 71 S.W.3d 738, 747 (Tex.Crim.App. 2002).

Cortez claims his case is analogous to *Shepherd v. Ledford*, 962 S.W.2d 28 (Tex. 1998). In *Shepherd*, a veniremember agreed that "based upon [his] past experience, [he] could not be fair and objective in looking at the medical facts as they have been testified to so that both sides start out evenly[,]" and that the plaintiff was starting out "ahead." *Id.* at 34. We held

that the veniremember was biased as a matter of law, and that the trial court abused its discretion in failing to strike him for cause. *Id.* That veniremember, unlike Snider, agreed that he "could not be fair and objective" in looking at the facts, and that is what disqualified him. *Id.* Snider said he was "willing to try" to decide the case on the facts and the law.

■■■■■■ Asking a veniremember which party is starting out "ahead" is often an attempt to elicit a comment on the evidence. *See* Scott A. Brister, *Lonesome Docket: Using the Texas Rules to Shorten Trials and Delay*, 46 Baylor L.Rev. 525, 538 (1994). Such attempts to preview a veniremember's likely vote are not permitted. *See Lassiter v. Bouche*, 41 S.W.2d 88, 90 (Tex.Civ.App.-Dallas 1931, writ ref'd); *Campbell v. Campbell*, 215 S.W. 134, 137 (Tex.Civ.App.-Dallas 1919, writ ref'd). Asking which party is "ahead" may be appropriate before any evidence or information about the case has been disclosed,[4] but here, the plaintiff's attorney gave an extended and emotional opening statement summarizing the facts of the case to the venire. A statement that one party is ahead cannot disqualify if the veniremember's answer merely indicates an opinion about the evidence. *See* Jim M. Perdue, *A Practical Approach to Jury Bias*, 54 Tex. B.J. 936, 940 (1991) (recommending that disqualification turns on follow-up question "Had you formed this opinion before you entered this courtroom?"). A statement that is more a preview of a veniremember's likely vote than an expression of an actual bias is no basis for disqualification. Litigants have the right to an impartial jury, not a favorable one.

\*　　\*　　\*

4. *See Shepherd*, 962 S.W.2d at 34 (holding veniremember was properly disqualified

based on statements about treatment of his father).

We hold that Cortez properly preserved error and that veniremember Snider was not biased as a matter of law. The trial court therefore did not abuse its discretion in failing to strike Snider for cause. We affirm the judgment of the court of appeals.

Justice GREEN did not participate in the decision.