COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-326-CV

 

 

IN THE INTEREST OF C.S.,
A.K.A.                                                          

C.R.
AND C.S., THE CHILDREN

                                                                                                        

 

                                              ------------

 

            FROM
THE 158TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

In one issue, appellant
Brooke R. complains that the trial court erred by refusing to allow her to ask
two questions during voir dire.  We
affirm.

BACKGROUND








In 2006, Appellant went
before a jury on the State=s petition to terminate her parental rights to C.R. and C.S.  Appellant, age twenty‑four at trial,
had been in and out of jail on drug charges since 2003.  She was charged with child endangerment in
2005 when she fell asleep in a motel room and C.S., then age two, left the room
and was found near Highway 121.  She pled
guilty and was convicted of that offense. 
She used drugs while pregnant with each child. When C.R. tested positive
for methamphetamine at birth, Child Protective Services (ACPS@) removed
the children.  She did not complete her
service plan and continued to use drugs after the children=s removal.

The jury found, by clear and
convincing evidence, that she had knowingly placed or knowingly allowed C.S.
and C.R. to remain in conditions or surroundings that endangered their physical
or emotional well‑being, engaged in conduct that endangered C.S.=s and C.R.=s physical
or emotional well‑being, failed to comply with the provisions of the
court order that specifically established the actions necessary for C.S. and
C.R. to be returned to her when the children had been in the State=s care for not less than nine months after their removal from her, and
that termination of her parental rights to both children was in the children=s best interests.  See Tex. Fam. Code Ann. ' 161.001(1)(D), (E), (O), (2) (Vernon Supp. 2006).  The trial court approved the jury=s findings and incorporated them into the termination order.

 

 

 








VOIR DIRE

Appellant argues that the
trial court erred by refusing to allow her Ato ask proper voir dire questions which went to the heart of her case.@[2]

Standard Of Review








We review a trial court=s voir dire rulings for an abuse of discretion.  See Hyundai Motor Co. v. Vasquez, 189
S.W.3d 743, 753 (Tex. 2006).  To
determine whether a trial court abused its discretion, we must decide whether
the trial court acted without reference to any guiding rules or principles; in
other words, we must decide whether the act was arbitrary or unreasonable.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241‑42 (Tex. 1985), cert. denied, 476 U.S. 1159
(1986).  Merely because a trial court may
decide a matter within its discretion in a different manner than an appellate
court would in a similar circumstance does not demonstrate that an abuse of
discretion has occurred.  Id.  A trial court abuses its discretion if its
denial of a proper question prevents a party from determining whether a
venireperson is subject to a challenge for cause.  Babcock v. Nw. Mem=l Hosp., 767 S.W.2d 705, 709 (Tex.
1989).  To obtain a reversal, the
complaining party must show both that the trial court abused its discretion and
that the error probably caused rendition of an improper judgment.  Tex.
R. App. P. 44.1(a)(1); Romero v. KPH Consolidation, Inc., 166
S.W.3d 212, 225 (Tex. 2005).

Voir Dire Questions

Appellant complains that she
was prevented from exploring the issues of (1) whether the panel believed that,
all things being equal, a permanent foster family was superior or inferior to a
temporary placement with relatives, and (2) how many foster children in a given
foster home would be a Agood number.@ She contends that neither question called for Acontracting@ with the
jury and that the trial court=s rulings prevented her from exploring the panel=s feelings with regard to the case=s central issue: whether it was in the children=s best interests to terminate Appellant=s rights and place the children with a foster family.

Voir Dire

During voir dire, the State
asked questions about CPS, the removal process, service plans and treatment,
the burden of proof and statutory grounds for termination, and whether the
members of the venire panel felt that they could terminate someone=s parental rights.  Appellant
also asked questions about the burden of proof and statutory grounds, as well
as options for child placement before termination, i.e., removal to relatives
who could temporarily take the child versus permanent foster care.








Questions 1 and 2, addressed
below, were not the only voir dire questions objected to on the basis of
contracting or commitment.  Appellant
objected twice on the basis of Aimproper commitment@ to the State=s questions
about whether the venire panel could terminate someone=s parental rights if the case did not involve severe abuse and whether
they could not terminate someone for failing to comply with the service
plan.  The trial court warned the State
to stay away from commitment after the first objection, but stated that it
considered the question on the second topic to be Aphilosophical . . ., not contractual,@ and overruled that objection.








The State=s first objection on the basis of contracting was to Appellant=s question on whether the venire panel would be able to give the
testimony of a witness with a drug or alcohol problem as much weight.[3]  The State objected and the trial court warned
Appellant, AStay away
from trying to contract.@  After the trial court sustained the State=s objection to Question 1, the State objected to Appellant=s question regarding whether, if the child had been returned to the
parent for six months of monitoring as a last chance, A[d]o you believe that that could influence your decision as to whether
or not the [State] has done all that it can do to try and reunite the family?@  The trial court indicated that
it did not think this was contracting. 
The State also objected, on the basis of contracting on a nonessential
issue, to the question, ADo you think
that it would have been better for [Appellant] to have an attorney appointed at
the very beginning of this case instead of at the end?@  The trial court stated that it
thought this was an improper question. 
Finally, with regard to a question about, if there were a guilty plea to
some of the termination charges, whether that was all someone would consider,
the State objected on the basis of contracting. 
The trial court overruled this objection, stating that it did not think
that was contracting.

The State also objected to
Appellant=s
misstatement of the law and evidence with regard to termination of Arelatives= rights@ and to Appellant making reference to what the State had or had not
done with regard to reunification during voir dire.  The trial court sustained these objections.

Question 1








With regard to Question 1,
Appellant began the discussion by asking the venire panel, with regard to the
initial removal process, ANow, the
question that we have is[,] where does that removal go to?  If the parents are in a situation where they
are not the first option, who is the second option?  Anybody have any preferences who the second
option would be?@  After the venire panel responded, Arelatives,@ Appellant
followed up with, ASo everyone
believes that the relatives should be looked at as much as possible?@  The venire panel responded, Ayes.@  Appellant then asked, AWould y=all agree
that maybe you could sacrifice a little bit of permanence in order to place the
children with a relative?  Front row.@

Appellant then spurred
considerable discussion among the members of the venire panel with the
following questions:

So you believe that if a
relative says, you know, I can=t make a permanent commitment, that they should be considered for
placement and the children should go to foster care?

If
they can=t
commit to say I=m
going to do this permanently, do you think that should necessitate a foster
home removal?  Or you should try and
place them with a relative?

 

So if
the relatives can say, hey, I can watch them temporarily.  I am not going to commit to adopt them if
their rights are terminated.  But I will
watch them temporarily while the parents work on their plan.  Do you think that CPS, CASA, and all those
people, do you think they should try and place them with a relative or go with
foster care and possibly adopt them from the very beginning? 

 

But
if the relative doesn=t
want to make a commitment to adopt at the very first day, should the [State]
make the decision to try and have just temporary placement with the relative?

 

[T]he
decision is, at the initial removal, should the children be completely uprooted
or should they be placed with a relative[?]

 








What
we are talking about, though, is that during the interim period, should CPS and
the people, the [State], that are making the decisions, should they be looking
more towards a relative placement or a placement with a foster family[?]  And if the relative can only make a temporary
commitment, is that better than placing him with a foster family that can make
a permanent commitment[?] 

 

If
both are good houses; however, the relative says, hey, man, I don=t
want to jump off the boat for an adoption at this moment.  I have the utmost faith that the other people
will get there, you know, will get to the end point where they need to be.  Or should the first option be for the [State]
to place them with the foster parent who=s willing to adopt.

 

Is it
better to have the children placed in the initial removal, when the kids are
first taken away from the parents on day one, is it better for the [State] to
place them with a relative who can make a temporary commitment, or is it better
to place them in a foster home that can make a permanent commitment to try and
adopt[?] 

 

Finally, in Question 1,
Appellant reiterated,

Now,
at the very beginning, you have your temporary hearings.  And when the children are removed, the
decision has to be made where the children are going to stay pending the final
outcome.  And the question is[,] you
have two equal households.  Is it better
to be with a foster parent who=s willing to adopt, make that
commitment?  Or to stay with a relative
to keep them within the family unit, even though they can=t
make the guarantee that they will adopt at the end of the permanency hearing?  [Emphasis added.]

 

The venirepersons responded,

Eades:       Can=t
they stay with the relative without being adopted? . . . I don=t
understand why they have to say they are going to adopt them on the front end.

 








Appellant responded, AIf there is a question that
there wasn=t a
commitment for permanency, do you believe thatClet=s
start with Ms. Fair.  Do you think
relative orC.

 

Fair:          I think it really depends on the whole situation.  I can=t say it is better for the
child to be placed in a relative=s home that=s not
necessarily permanent.

 

Simpson:    But he said if they are equal.

 

Fair:          You have to sit there and you have to look at everything
involved.  You just can=t say
yes or no.

 

Appellant
stated, AAll
right.  Ms Shiro.@

 

Shiro:        Me? . . . I keep going back and forth.  It is very hard for me to make a decision,
because part of me thinks that they should go with a relative.  But then part of me thinks that they should
have something more permanent.  So I
really can=t
make a decision.

 

Appellant replied, AOkay.  And, Mr. Culpepper.@








Before Culpepper could
answer, the State objected, stating, AJudge, at this time we would object that he is contracting on an issue
that=s not going to be submitted to the Jury.@  The trial court sustained the
objection, and added, AMove on to
something else.@  Appellant argued, AWith regard to the action of the [State], I would say that they have a
duty here to try and have a relative placement instead of going through foster
care.  And I would like to be able to get
into those issues.@  The trial court responded, AArgument in front of the Jury. 
Sustain the objection.@[4]

Question 2

Appellant asked, AHow many people believe that looking into the background of the foster
home is important, also?@ and then
rephrased, on the request of a venireperson, AIs it important to look at the background of the foster home?@  The venire panel responded, Ayes.@  Appellant then asked Question 2: AHow many foster kids do y=all think is, just this front row, a good number?  Too much? 
Not enough?@ [Emphasis
added.]








The State objected, AObject as to contracting as to how many children is appropriate,
Judge.@  The trial court sustained the
objection.  Appellant followed this
question with, A[D]oes
anyone believe that you can have too many foster kids in a home?@  The venire panel responded, Ayes.@  Appellant then asked, ADoes anyone believe that foster families should have as many kids as
they want?@  The State=s attorney objected based on contracting, to which the trial court
responded, ALet him
finish the question.@[5]

Analysis








Voir dire=s primary purpose is to inquire about specific views that would
prevent or substantially impair jurors from performing their duty in accordance
with their instructions and oath, that is, to determine whether jurors are
disqualified by statute.  Vasquez,
189 S.W.3d at 749‑50.  Section
62.105 of the government code sets out juror disqualifications for service in a
particular case.  Tex. Gov=t Code Ann. ' 62.105 (Vernon 2005).  Among
other reasons, a person is disqualified to serve in a particular case if he or
she has a bias or prejudice in favor of or against a party in the case.  Id. ' 62.105(4).  Counsel=s broad latitude in voir dire is constrained by reasonable trial court
control.  Vasquez, 189 S.W.3d at
750.  The trial court may place
reasonable limits on questioning that is duplicative or a waste of time.  Cortez ex rel. Estate of Puentes v. HCCI‑San
Antonio, Inc., 159 S.W.3d 87, 92 (Tex. 2005).

To preserve a complaint for
our review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling,
if they are not apparent from the context of the request, objection, or
motion.  Tex. R. App. P. 33.1(a); see also Tex. R. Evid. 103(a)(1).  If a party fails to do this, error is not
preserved, and the complaint is waived.  Bushell
v. Dean, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh=g).  The objecting party must
get a ruling from the trial court.  This
ruling can be either express or implied. 
Frazier v. Yu, 987 S.W.2d 607, 610 (Tex. App.CFort Worth 1999, pet. denied). 
To preserve a complaint that a trial court improperly restricted voir
dire, a party must timely alert the trial court as to the specific manner in
which it intends to pursue the inquiry.  Vasquez,
189 S.W.3d at 758.  Such a requirement
provides the trial court with an opportunity to cure any error, obviating the
need for later appellate review, and further allows an appellate court to examine
the trial court=s decision
in context to determine whether error exists, and if so, whether harm
resulted.  Id.








With regard to Question 1,
Appellant preserved error by explaining to the trial court the basis for the
question and securing a ruling.  However,
with regard to Question 2, Appellant provided no further explanation after the
trial court sustained the State=s objection.  Instead, she
reworded questions on the same issue, and, although the State began to object,
it did not complete its objection and the reworded questions were allowed.  Therefore, with regard to Question 2,
Appellant has not preserved her complaint for our review.  See Tex.
R. App. P. 33.1(a); See Vasquez, 189 S.W.3d at 758.

Appellant claims that
Question 1 related to her ability to identify potential jurors who were biased
against placement with relatives of an alleged abusive or neglectful parent and
that this was directly related to her theory that termination was not in the
children=s best interests because there were satisfactory options for placement
with relatives that CPS had not adequately explored.  She claims that the trial court=s denial of her voir dire question impacted her ability to explore the
case=s central issues and that she suffered harm thereby.








After an extensive review of
the record, we conclude that even if 
Question 1 was a proper voir dire question, the trial court did not
abuse its discretion by sustaining the State=s objection and ending Appellant=s questioning on the pretrial placement issue.  By the time she asked Question 1, Appellant
had already rephrased the question several times and had received considerable
response and discussion by the venire panel. 
It was within the trial court=s sound discretion to end this duplicative questioning and instruct
Appellant to move on to another topic.  See
Cortez, 159 S.W.3d at 92.  We
overrule Appellant=s sole
issue.

CONCLUSION

Having overruled Appellant=s sole issue, we affirm the trial court=s judgment.

 

PER CURIAM

PANEL F: 
HOLMAN, DAUPHINOT, and GARDNER, JJ.

DELIVERED: 
July 12, 2007











[1]See Tex. R. App. P. 47.4.





[2]Appellant was represented by
counsel at trial.  Except where otherwise
unclear, we refer to Appellant and her trial attorney as AAppellant.@





[3]Appellant asked, ASo you are saying that if someone,
whoever, had a drug or alcohol problem, were to take the stand, you would not
be able to give their testimony as much weight?@ 
The State argued, AObject to contracting.  Judge, I believe once they start hearing
information about somebody, such as if they were a drug user or something like
that, if they are allowed to take that into consideration as far as their
credibilityC.@





[4]Throughout trial, Appellant
solicited testimony about CPS and CASA=s decision‑making process with regard to family
placement, including who had been contacted and what they had been asked.  Appellant=s counsel admitted to the trial court, outside the jury=s presence, that he was trying to
get to testimony about the review process with regard to whether there could
have been a mistake in placement.  The
State repeatedly objected on the basis that the issue was not before the jury
and that the only issue was whether to terminate Appellant=s parental rights.





[5]Appellant asked, without objection
from the State, AI was just trying to say, not
everyone who agrees with me, just the people who disagree with the
statement.  So how many people believe
that there should be no limit to the amount of kids in the foster home? . . .
Okay.@ 
The venire panel responded by show of hands.

During trial, the
children=s foster parents testified that
C.S. and C.R. had lived with them for sixteen months and that they wanted to
adopt them. Appellant asked how many foster children were currently living with
them.  They testified that they had six
foster children, plus their natural child, in the four‑bedroom home.  The foster mother testified that six was
their personal limit for foster children, but that she did not know what the
State=s limit was.