**Affirmed and Memorandum Opinion filed August 16, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00669-CV

---

## IN RE THE COMMITMENT OF JERRY WAYNE HUTYRA, APPELLANT

---

### On Appeal from the 268th District Court
### Fort Bend County, Texas
### Trial Court Cause No. 16-DCV-236479

---

## M E M O R A N D U M   O P I N I O N

Jerry Wayne Hutyra appeals his civil commitment under the sexually violent predator statute (the "SVP statute"). *See* Tex. Health & Safety Code §§ 841.001-.153. To show that a person is a sexually violent predator, the State must prove that the person (1) is a repeat sexually violent offender, and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a). In his first issue, Hutyra contends the trial court erred by denying his challenges for cause to certain venire members. In his second issue, Hutyra challenges the legal and factual sufficiency of the evidence to support a

finding that he suffers from a behavioral abnormality making him likely to engage in a predatory act of sexual violence. We affirm.

## Background

In August 1996, Hutyra pleaded guilty to the aggravated sexual assault of the nine-year-old daughter of his live-in girlfriend and was placed on deferred adjudication community supervision for ten years. In August 1999, Hutyra pleaded guilty to the aggravated sexual assault of the twelve-year-old daughter of another girlfriend. We will refer to the two child victims as Nadine and Alicia.[1] In December 1999, pursuant to a plea bargain agreement, the trial court sentenced Hutyra to twenty years' confinement in the Texas Department of Criminal Justice, Institutional Division, for each offense. Hutyra was expected to completely discharge his sentence on October 31, 2019. Anticipating Hutyra's discharge, the State of Texas petitioned the Fort Bend County District Court to declare Hutyra a sexually violent predator ("SVP") and to civilly commit him for treatment and supervision. Hutyra demanded a jury trial, and his trial commenced in February 2017.

### A. Voir Dire

During jury selection, the State informed the venire panel that the jury would be tasked with determining whether Hutyra is an SVP. Some of the venire members vacillated when asked whether they could listen to the evidence, follow the law, and reach a verdict after hearing about sexual offenses against a child or pedophilia. Counsel for the State asked, "If you hear either 'pedophilia' or 'child victims,' [raise your cards if you agree that] you cannot listen to the evidence, follow the law, and

---

[1] To protect the children's identities, we refer to them by pseudonyms.

reach a verdict in this case?" Several venire members raised their cards, including member number 42.

When Hutyra's counsel examined the venire panel, she asked follow-up questions on the same topic:

> If you hear evidence about a sex offense against a child or you hear about pedophilia — and for those of you who don't know, pedophilia is being attracted to individuals who are prepubescent — basically, give or take, under the age of 13 — and if you can't be fair if you hear about a pedophilia diagnosis or if you hear about a child victim, if you could just raise your card and keep it up.

> How many of you feel if you hear evidence about child victims or you hear about a pedophilia diagnosis, you feel like this isn't the case for me, I'm not going to be able to listen to the Court's instructions, I'm not going to be able to listen to the evidence, and I'm not going to be able to render a impartial verdict in this case? If you feel that way, if you could just raise your card for me.

Both venire members 37 and 42 raised their numbers, as did about three-quarters of the venire panel.

In response to the overwhelming number of panel members who felt they could not be fair in the face of evidence of pedophilia or child victims generally, the trial court clarified the issue:

> You need to understand that you're not going to be asked whether the person committed an offense of sexual assault of a child or sexual assault of anybody else. You're going to be asked the two questions that the State has shown you already; and in that testimony, there will be testimony to the effect that -- or they will present testimony to you or try to present testimony to you that an offense has occurred. Whether the offense has occurred or not is not going to be a decision that you will have to make. The only decision you're going to have to make is the answers to the two questions that are going to be asked.

> Now, you're not here to play merry-go-round or answer simple questions. You're here to answer really tough questions, and it's going

to take 12 of you to reach an answer. So the question about whether you want to hear this information or not is not before you. The question is: The fact that an offense could be presented to you, will that mean that you cannot answer those questions? Now, if you cannot, raise your cards.

Neither member number 37 nor member number 42 raised their cards.

During the selection process, Hutyra challenged numerous potential jurors, including members 37 and 42, on the basis that they could not render an impartial verdict in this case. The trial court denied thirteen of Hutyra's challenges for cause, including challenges to members 37 and 42. Hutyra exercised his total allotment of peremptory strikes against ten venire members whom he unsuccessfully challenged for cause. Hutyra sought two more peremptory strikes to use on members 37 and 42. The trial court denied Hutyra's request for additional strikes, and members 37 and 42 both served on the jury.

## B.    Trial

Hutyra testified that he has been in prison since 2000. He explained that, when he was dating Nadine's mother, their sexual relationship went "downhill." He sexually assaulted Nadine because he was depressed and lonely and had poor judgment. He was charged with aggravated sexual assault of Nadine and placed on deferred adjudication probation. While on probation, Hutyra attended mandatory sex-offender treatment for about three years. However, he violated the rule requiring him to stay away from children and engaged in sexually prohibited conduct, including sexual assault, against Alicia. He explained his offenses against Alicia in a similar fashion as his offenses against Nadine: his sexual relationship with Alicia's mother went downhill, he became depressed, and he sexually assaulted Alicia.

While in prison, Hutyra has behaved very well. At the time of his trial, he was enrolled in sex-offender treatment at TDCJ and described the treatment as much better than his previous treatment. He expressed a desire to learn all he can and to address his sexual attraction to children. He stated his goal as trying to get his sexual urges regarding female children under control. He acknowledged that being around female children would be a high risk situation for him.

The State presented three experts, psychiatrist Dr. David Self and psychologists Dr. Jason Dunham and Dr. Stephen Thorne.[2] Dr. Thorne was originally retained in this case to perform a pre-petition evaluation of Hutyra.[3] During Dr. Thorne's interview with Hutyra, Hutyra acknowledged that his sexual assaults against both Nadine and Alicia were not "one time things." Hutyra reported to Thorne that he had engaged in sexually prohibited conduct, including assault, against Nadine several times over a two-year period and that he also engaged in sexually prohibited conduct, including assault, against Alicia repeatedly for well over a year before he was caught. During his evaluation with Dr. Thorne, Hutyra described several sexual incidents against Nadine and detailed fifteen sexual incidents involving Alicia.

Dr. Self, who has performed about 90 behavioral abnormality evaluations since 2009, identified numerous risk factors for Hutyra, including his pedophilic disorder, that he offended while on probation, that his sexual offenses were committed against non-related and non-familial victims, that he groomed both of his victims, and that he has failed to complete sex-offender treatment. Dr. Self

---

[2] Thorne appeared only via videotaped deposition.

[3] *See* Tex. Health & Safety Code § 841.023 (providing for the assessment of an inmate identified as a possible SVP by an expert for a behavioral abnormality that makes the inmate likely to engage in a predatory act of sexual violence).

expressed concerns about the strength of Hutyra's attraction to prepubescent girls as Hutyra engaged in sexually prohibited conduct against both girls repeatedly while he had appropriate sexual relationships with their mothers. Hutyra's offense against Alicia while under close scrutiny and on probation for his offense against Nadine highlights Hutyra's inability to control his behavior. Dr. Self classified Hutyra's good prison behavior and the fact that Hutyra has a good family support system, which would ordinarily be positive factors that reduce risk for sexually reoffending, as "non-negative." According to Dr. Self, Hutyra had the same family support system when he offended against both Nadine and Alicia, so these factors did not change his opinion. Although Hutyra was enrolled in the TDCJ sex-offender treatment program, Dr. Self opined that someone with Hutyra's history cannot "fix" his problem in a few months. Dr. Self opined that Hutyra's current risk of reoffending is moderate to high, which makes him a menace to the health and safety of others.

According to Dr. Dunham, Hutyra's risk factors included manipulating his therapist and probation officers while on probation, assaulting Alicia after having been caught and punished for assaulting Nadine, offending while under treatment, offending while in appropriate consensual sexual relationships, offending against multiple victims multiple times, and his ingrained pedophilic disorder. Dr. Dunham also identified several positive factors that reduced Hutyra's risk for sexually reoffending, including Hutyra's age and his extraordinarily good behavior in prison. However, Dr. Dunham did not believe that the nine-month TDCJ sex-offender treatment program in which Hutyra participated would lower Hutyra's risk of reoffending. Dr. Dunham opined that Hutyra is predisposed to commit a sexually violent offense and is a menace to the health and safety of others.

Hutyra presented the expert testimony of psychologist Dr. Marisa Mauro. Dr. Mauro, a licensed sex-offender treatment provider, has performed over 100 evaluations for respondents in SVP cases. Dr. Mauro agreed with Drs. Self and Dunham that Hutyra suffers from a pedophilic disorder. She also agreed that Hutyra's risk factors included that he is a sexual recidivist, had non-related victims, suffers from pedophilic disorder, and reoffended while on probation for a sexual offense. She identified several positive factors, including Hutyra's age, that he will complete the TDCJ sex-offender treatment program before he is released, that Hutyra has a good support system, his good institutional adjustment, and Hutyra's plan for moving forward when he is released from prison. Based on Dr. Mauro's evaluation of Hutyra, she opined that he did not suffer from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

After hearing the evidence and argument of counsel, the jury found that Hutyra is a sexually violent predator. Based on this verdict, the trial court signed a final judgment and an order of civil commitment. Hutyra filed a motion for new trial, challenging the trial court's denial of his challenges for cause and the legal and factual sufficiency of the evidence; this motion was overruled by operation of law. This appeal timely followed.

## Challenges for Cause

In his first issue, Hutyra asserts that the trial court erred by denying his challenges for cause to venire members 37 and 42.[4]

---

[4] As noted above, after the trial court denied Hutyra's challenges for cause to other venire members, he used his peremptory strikes on those members. Hutyra then identified members 37 and 42 as objectionable jurors he would have struck from the panel had the trial court granted his challenges for cause. He sought additional peremptory strikes to use on these venire members, but the trial court denied his request. These two venire members sat on the jury. Thus, Hutyra properly

Under Texas Rule of Civil Procedure 504.2, a party may challenge potential jurors for cause by objecting "to a juror alleging some fact, such as bias or prejudice, that disqualifies the juror from serving in the case or that renders the juror unfit to sit on the jury." Tex. R. Civ. P. 504.2(d). Bias is an inclination toward one side of an issue rather than to the other. *See Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 749 (Tex. 2006). Disqualification of a venire member extends to bias or prejudice against the subject matter of the suit as well as against the litigants. *Id.* To disqualify a potential juror for bias as a matter of law, the record must show conclusively that the potential juror's state of mind led to the natural inference that he or she would not act with impartiality. *Id.* An equivocal expression of bias, however, is not grounds for disqualification as a matter of law. *Cortez ex rel. Estate of Puentes v. HCCI-San Antonio, Inc.*, 159 S.W.3d 87, 94 (Tex. 2005) ("Many potential jurors have some sort of life experience that might impact their view of a case; we do not ask them to leave their knowledge and experience behind, but only to approach the evidence with an impartial and open mind. . . . Any bias [the challenged juror] did express was equivocal at most, *which is not grounds for disqualification*." (emphasis added)).

We review a trial court's rulings on challenges for cause for an abuse of discretion, in light of the entire jury selection process. *In re Commitment of Talley*, 522 S.W.3d 742, 747 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Cortez*, 159 S.W.3d at 92-93). Under this familiar standard, a trial court abuses its discretion when it acts arbitrarily or unreasonably and without reference to guiding rules or principles, or when it misapplies the law to the facts of the case. *Id.* Further, the

---

preserved his jury selection complaint for our review. *See, e.g., Cortez ex rel. Estate of Puentes v. HCCI-San Antonio, Inc.*, 159 S.W.3d 87, 90 (Tex. 2005); *Escamilla v. State*, 143 S.W.3d 814, 821 (Tex. Crim. App. 2004).

Supreme Court of Texas has explained that, because the statutory standards for bias or prejudice are the same in civil and criminal cases, voir dire standards should remain consistent. *Hyundai Motor Co.*, 189 S.W.3d at 753.

As detailed above, venire members 37 and 42 raised their cards in response to a query about whether they "felt like" they would not be able to render an impartial verdict in a case involving "evidence about child victims" or "a pedophilia diagnosis."[5] But when the trial court informed the venire panel that the jury would not be determining whether Hutyra suffers from pedophilia or committed offenses against children, both venire members 37 and 42 indicated that they would be able to answer the questions presented to them in this case.

The First Court of Appeals recently addressed a similar issue in an SVP case. *See Talley*, 522 S.W.3d at 744-48. In that case, several venire members indicated a bias against a person diagnosed with pedophilia. *Id.* at 747. The trial court followed up, instructing the panel about their obligation to consider all of the evidence presented; all of the panel members except member 56 indicated that they could follow the trial court's instruction. *Id.* Venire member 56 indicated when questioned that she would conclude, based on someone's diagnosis as a pedophile, that the person had a behavioral abnormality. *Id.* at 748. However, this panel member's responses to earlier questions indicated that she could set aside any bias regarding Talley's prior convictions and evaluate the evidence fairly. *Id.* On appeal, as here, Talley asserted the trial court abused its discretion in denying his challenge for cause

---

[5] "Bias is not established as a matter of law merely because venire members raise their hands in response to a general question addressed to the entire panel." *Taber v. Roush*, 316 S.W.3d 139, 165 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that juror's raising hand in response to question about difficulty giving same weight to out-of-state experts as in-state experts did not establish bias as a matter of law).

to this venire member. *Id.* In overruling Talley's jury complaint, our sister court reasoned:

> The parties did not further follow up with venire member 56 individually to determine whether she no longer could fairly consider the case. The trial court was in the best position to evaluate the venire member's answers and determine whether the juror could fairly consider the evidence presented. Because the record demonstrates that venire member 56 gave equivocal responses as to whether she harbored a disqualifying bias, we hold that the trial court acted within its discretion in denying Talley's challenge for cause.

*Id.*

Similarly, here, venire members 37 and 42 responded equivocally. As detailed above, although they indicated they harbored a bias against someone diagnosed with pedophilia, they also agreed that they could serve on the jury and answer the questions posed. Hutyra did not follow up with these venire members to determine whether they could fairly consider the evidence in this case. *Cf. Gonzales v. State*, 353 S.W.3d 826, 831 (Tex. Crim. App. 2011) ("To establish that the challenge for cause is proper, the proponent of the challenge must show that the venireperson understood the requirements of the law and could not overcome his prejudice enough to follow the law."). We conclude that, as in *Talley*, the trial court was in the best position to evaluate these venire members' answers and determine whether they could fairly consider the evidence presented. Thus, we cannot say the trial court abused its discretion in denying Hutyra's challenges for cause to venire members 37 and 42.

For the foregoing reasons, we overrule Hutyra's first issue.

## Sufficiency of the Evidence

In his second and third issues, Hutyra challenges the legal and factual sufficiency of the evidence to support the jury's finding that he is an SVP.

Because the State is required to prove beyond a reasonable doubt that a person is an SVP, we review an appeal from such a proceeding using the same legal-sufficiency standard applicable to criminal cases. *See In re Commitment of Harris*, 541 S.W.3d 322, 327 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Under this standard, we review the evidence in the light most favorable to the verdict to determine whether a rational fact finder could have found, beyond a reasonable doubt, the elements required for commitment. *Id.* The jury is the sole judge of the witnesses' credibility and of the weight to be given to their testimony. *Id.* We review the factual sufficiency of the evidence by considering all of the evidence in a neutral light and asking whether a jury was rationally justified in finding that a person is an SVP beyond a reasonable doubt. *See id.* Under this standard, we consider "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *Id.*

To establish that Hutyra is an SVP, the State was required to prove beyond a reasonable doubt that Hutyra is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See* Tex. Health & Safety Code §§ 841.003(a); 841.062(a). Hutyra only challenges the second element here: that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. A behavioral abnormality is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). "'Predatory act' means an act directed toward

11

individuals, including family members, for the primary purpose of victimization." *Id*. § 841.002(5). Offenses identified in the SVP statute as "sexually violent offenses" are, by their nature, "committed for the primary purpose of victimization." *In re Commitment of White*, No. 14-17-00115-CV, 2018 WL 344063, at *10 (Tex. App.—Houston [14th Dist.] Jan. 9, 2018, no pet.) (mem. op.).

Hutyra contends that the following facts render the evidence legally and factually insufficient to show he suffers from a behavioral abnormality: (1) he does not have an antisocial personality disorder and he is not a psychopath; (2) he scored at average risk on the Static-99R actuarial test, which is designed for assessing sexual recidivism; (3) he accepts responsibility for what he did; and (4) he is "on track" to complete the sex-offender treatment program offered by TDCJ. We disagree that these facts render the evidence legally or factually insufficient.

First, Hutyra presents no authority to support his position that the evidence is insufficient to support the jury's finding because he was not diagnosed with an antisocial personality disorder or determined to be a psychopath.[6] Instead, the only question a jury must answer in a civil commitment trial is whether a person suffers from a behavioral abnormality that makes that person predisposed to committing sexually violent acts. *See In re Commitment of Bohannan*, 388 S.W.3d 296, 306 (Tex. 2012). Although a medical diagnosis of a person's mental health may inform an assessment of whether that person has such a behavioral abnormality, determining whether a person suffers from a predisposing condition does not rest solely on such a diagnosis. *See id.*; *In re Commitment of Richard*, No. 09-13-00539-CV, 2014 WL

---

[6] Hutyra relies on the fact that the SVP statute calls for psychopathy testing. Section 841.023(a) applies to the pre-petition administrative screening process and is designed to assist TDCJ in its initial determination whether an inmate scheduled for release may be a sexually violent predator. *See* Tex. Health & Safety Code § 841.023(a).

2931852, at *2 (Tex. App.—Beaumont June 26, 2014, pet. denied) (mem. op.); *see also In re Commitment of H.L.T.*, —S.W.3d—, 2017 WL 4413435, at *3 (Tex. App.—Waco Oct. 4, 2017, pet. denied) (explaining that the State is not required to have a testifying expert test for psychopathy). In short, Hutyra's contention that the evidence is insufficient to support the jury's finding because the experts in this case determined that he does not suffer from an antisocial personality disorder or psychopathy lacks merit.

Regarding Hutyra's score on the Static-99R test, this test considers risk factors for sexually reoffending and uses them to assess the relative risk of recidivism. The experts in this case all agreed that it does not test for a behavioral abnormality. Hutyra's expert, Dr. Mauro, testified that this score, standing alone, does not allow for an estimation of risk. She explained that a person may score the lowest possible score on this test and still have a behavioral abnormality. Indeed, the experts all agreed that the Static-99R test does not consider certain risk factors that are relevant to Hutyra. Thus, Hutyra's assertion that his score on this test renders the evidence insufficient fails.

Hutyra's other bases for challenging the sufficiency of the evidence are likewise unavailing. Although Hutyra claims he has "accepted responsibility" for his actions, he disagreed that he suffers from pedophilia. And by Hutyra's own admission, he committed numerous sexual offenses against his two prepubescent victims. At the time he committed the charged offenses against Nadine and Alicia, Hutyra knew what he was doing was illegal and that he could go to prison. Nonetheless, he engaged in prohibited sexual conduct against these girls multiple times. Moreover, he sexually offended against Alicia while he was on community supervision for his offense against Nadine and enrolled in a sex-offender treatment

13

program. At his trial, he testified that his sexual urges toward female children were "not all the way" under control, but he was "trying to get" them under control.

In short, the jury heard substantial evidence contradicting Hutyra's position. For example, the experts all agreed that Hutyra suffers from pedophilia and that this is a chronic condition that represents a risk factor for reoffending. Both Drs. Dunham and Self agreed that Hutyra's pedophilia rises to the level of a behavioral abnormality. Dr. Self opined that Hutyra's pedophilic disorder is a congenital or acquired condition that makes him a menace to the health and safety of others and predisposes him to commit sexually violent acts. Similarly, Dr. Dunham opined that Hutyra's risk factors are evidence of his affected emotional and volitional capacity, and that they make him a menace to the health and safety of others. In other words, both of these experts agreed that Hutyra is predisposed to commit a sexually violent offense. Even Hutyra's expert, Dr. Mauro, agreed that Hutyra has a condition, but she opined that his condition does not make him likely to commit a sexually violent offense today.

Jurors are the sole judges of the credibility of witnesses and the weight to be given to their testimony. *Harris*, 541 S.W.3d at 327. By their verdict, the jurors chose to assign more weight to the testimony of the State's experts. Viewing the evidence in the light most favorable to the verdict, a rational jury could conclude beyond a reasonable doubt that Hutyra suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See id.* at 330; *see also* Tex. Health & Safety Code §§ 841.003(a); 841.062(a). And considering this evidence in a neutral light, we conclude that the jury was rationally justified in finding that Hutyra is an SVP beyond a reasonable doubt. *See Harris*, 541 S.W.3d at 330. Our review of the record does not reflect a risk of injustice warranting a new

14

trial.  Accordingly, the evidence is both legally and factually sufficient to support the jury's finding.

For the foregoing reasons, we overrule Hutyra's second and third issues.

## Conclusion

Having overruled Hutyra's three issues, we affirm the trial court's judgment.

/s/    Kevin Jewell
Justice

Panel consists of Justices Jamison, Wise, and Jewell.

15