**Opinion issued June 17, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00380-CR

———————————

**KRISTEN ALEIA SIMPSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 2**
**Harris County, Texas**
**Trial Court Case No. 1753959**

---

## MEMORANDUM OPINION

Kristen Simpson filed a motion for rehearing of our memorandum opinion of December 31, 2013. Simpson's motion for rehearing is overruled; the majority opinion of December 31, 2013 is withdrawn; and the following substitute majority opinion is issued in its place.

A jury convicted Kristen Aleia Simpson of the misdemeanor offense of driving while intoxicated.[1] The trial court assessed punishment at 180 days' confinement and a $500 fine, suspended the sentence, and placed Simpson on one year of community supervision. Simpson's appeal raises six issues. In her first four issues, Simpson contends that the trial court abused its discretion in denying her challenges for cause against four veniremembers who each expressed a belief that police officers are more credible witnesses. In her fifth issue, Simpson argues that the trial court's refusal to remove from its bench a Mothers Against Drunk Driving plaque during the DWI trial deprived her of substantial rights. Finally, in her sixth issue, Simpson contends the administratively assigned recusal judge abused her discretion by denying Simpson's motion to recuse the trial judge for bias, as evidenced by the MADD plaque and an anti-drunk driving video previously loaded onto YouTube that includes comments by the trial judge.

We affirm.

## Background

Simpson was involved in a two-car accident with W. Pineda. Before the accident occurred, Pineda noticed that Simpson was driving unsafely. When Pineda slowed for the car in front of him to turn, Simpson's car hit his twice from behind. Pineda testified that he spoke with Simpson immediately following the

---

[1] TEX. PENAL CODE ANN. § 49.04 (West Supp. 2013).

2

accident. He noticed that Simpson's eyes were red, and he recalled her saying that she felt dizzy. She apologized and offered to pay for the damage to his vehicle. Although Simpson asked Pineda not to call the police, he did.

Officer Zhang arrived and noted that Simpson had glassy and bloodshot eyes, slurred speech, and a moderate odor of alcohol. Because he suspected that Simpson was intoxicated, he administered the Horizontal Gaze Nystagmus field sobriety test. At trial, Officer Zhang testified that Simpson had six of six clues for intoxication during the HGN test.

Officer Zhang drove Simpson to Central Intox, where an evidence technician, Wooten, performed additional field sobriety tests and questioned Simpson. Wooten testified that Simpson told him she rear-ended Pineda because she could not react fast enough and that she had been drinking. When Wooten asked Simpson whether the alcohol affected her ability to drive, she replied that "apparently it did." Based on the physical indications of alcohol use, her performance on the field sobriety tests, and her statements while in custody, Simpson was charged with misdemeanor driving while intoxicated.

At the DWI trial, Simpson's counsel challenged for cause four of the veniremembers based on their statements that they felt police officers were more credible witnesses. Because the trial court denied the challenges for cause, Simpson had to use her peremptory strikes to prevent three of those

3

veniremembers from being seated on the jury. The trial court denied Simpson's request for additional peremptory strikes, allowing one of the challenged venire members to serve on the jury.

During voir dire, Simpson's counsel questioned the veniremembers about a plaque leaning against the back wall behind the trial judge's chair. The veniremembers confirmed that they could tell the plaque said "MADD" and realized it was from Mothers Against Drunk Driving. In front of the jury panel, Simpson requested the trial judge to remove the plaque, but he refused. During the trial—but outside of the presence of the jury—Simpson requested the trial judge recuse himself based on his failure to remove the plaque. The trial judge denied the motion, noting in his order that Simpson had elected to have the court assess punishment which, he contended, was an indication she did not, in fact, believe that he was biased against her.

At the conclusion of the trial, the jury found Simpson guilty of misdemeanor driving while intoxicated. The court sentenced her to 180 days' confinement, assessed a $500 fine, suspended the sentence, and placed Simpson on one year of community supervision. Simpson appealed.

**Challenges for Cause**

In her first four issues, Simpson contests the trial court's rulings on her challenges for cause. Four of the potential jurors—jurors number three, eight,

4

thirteen, and fourteen—indicated during voir dire that they believe police officers are more credible than other categories of witnesses. Simpson's counsel questioned each of them about their beliefs. The trial court also asked them questions. Simpson moved to strike the four veniremembers, but the trial court denied the motion. Both parties agree that Simpson preserved error to challenge the trial court's rulings. The State argues that none of the four veniremembers revealed an impermissible level of bias, considering the complete voir dire and not just isolated statements.

## A. Standard of review

A bias or prejudice that substantially impairs a potential juror's ability to carry out his oath and court instructions in accordance with the law disqualifies him from jury service. *See Gardner v. State*, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009). If the potential juror's bias or prejudice is established as a matter of law, the trial court has no discretion but to disqualify that person from jury service. *See Malone v. Foster*, 977 S.W.2d 562, 564 (Tex. 1998). If, on the other hand, the potential juror makes a statement indicating a bias but agrees he or she will apply the law as instructed, then the trial court has discretion to deny the challenge for cause. *See Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002).

The deference given the trial court's decision is even greater when the veniremember's statements are "ambiguous, vacillating, unclear, or contradictory."

5

*Gardner*, 306 S.W.3d at 295–96; *Feldman*, 71 S.W.3d at 744. Vacillation includes a statement indicating a bias toward one category of witness followed by a promise to listen to all witnesses before deciding credibility. *See Feldman*, 71 S.W.3d at 744–47. Similarly, an answer to a voir dire question that could be interpreted one way to show bias or another way that would not be subject to challenge is ambiguous and, therefore, left to the trial court's discretion. *See Gardner*, 306 S.W.3d at 296–97 (holding trial court had discretion to assign meaning to veniremember's ambiguous statement).

A considerable amount of deference is appropriate because the trial judge is in the courtroom and in the best position to observe the jurors' demeanor and tone. *See id.* at 295–97; *Feldman*, 71 S.W.3d at 744.

**B.   The trial court did not abuse its discretion denying challenges for cause**

Simpson argues that the four veniremembers "unequivocally stated that they would give more credibility to a police officer over another witness simply because they were a police officer" and, therefore, "demonstrated bias as a matter of law."

We review the entire voir dire record to determine if there is sufficient evidence to find bias as a matter of law by any of the four challenged veniremembers. *See Feldman*, 71 S.W.3d at 744. This includes the veniremembers' answers to questions by all counsel as well as the court. *See Anderson v. State*, 633 S.W.2d 851, 854 (Tex. Crim. App. 1982); *cf. Cortez v. HCCI–San Antonio, Inc.*,

6

159 S.W.3d 87, 91–92 (Tex. 2005) (rejecting argument that veniremember cannot be "rehabilitated" after indicating bias).

An example of deference towards police officer testimony that reaches the level of bias as a matter of law can be found in *Hernandez v. State*, 563 S.W.2d 947, 950 (Tex. Crim. App. 1978). The attorney there asked a potential juror if she believed that police officers would not lie on the witness stand. The following exchange occurred between the attorney and venire member:

> Q: I am not talking about making a mistake, I am talking about telling a knowing willing falsehood from the witness stand.
>
> A: I don't think a police officer would tell a falsehood from the witness stand.
>
> Q: Under any circumstances?
>
> A: No, I don't.

*Id.* The veniremember's firmly held conviction that police officers would never lie demonstrated a bias against the defendant and required that she be disqualified from jury service as a matter of law. *See id.*

During Simpson's trial, potential juror number three stated that he was good friends with a police officer, he believed officers were more credible witnesses, and the officers' training caused their testimony to "carry [ ] more weight," in his opinion. However, after additional instruction from the trial court, he affirmed that

7

he would not prejudge the credibility of any witness and would presume the defendant innocent.

Likewise, potential juror number eight began voir dire stating that he felt police officers had more credibility as witnesses. He explained that if he was unsure who to believe—after listening to all the testimony—he would go with the police officer's testimony because police officers are more credible. However, after the trial court explained the importance of waiting until a witness testifies to determine that witness's credibility, the potential juror agreed that he would not prejudge any witness.

Potential juror number thirteen gave a very similar explanation of his deference to police officers, but later agreed that he would not prejudge the credibility of a police officer or any other witness. In fact, he clarified that he already changed his position when counsel explained to him the necessity of waiting:

| | |
|---|---|
| Venire member: | Yes, sir. I did change my answer to I will listen to the testimony. |
| Court: | Can you make me a promise right now you will not prejudge the credibility just because they're police officers? |
| Venire member: | I did understand that after they explained that. I would not prejudge somebody until they actually testified, that is true. |

8

Finally, potential juror number fourteen explained his position as follows: "I would wait and listen to the testimony but being a trained police officer they would have my benefit of any doubt, if there was any doubt whatsoever. They would get the benefit of the doubt." However, after the trial court explained the importance of waiting to determine credibility, potential juror number fourteen agreed that he would wait for each witness to testify and would not prejudge any witness.

We hold that these statements by potential jurors number three, eight, thirteen, and fourteen were equivocal and, therefore, do not support a conclusion that the veniremembers were biased as a matter of law. *See Feldman,* 71 S.W.3d at 749 ("[W]e will uphold the trial court's decision when a prospective juror's answers are "vacillating, unclear, or contradictory."). Therefore, the question before this Court is whether the trial court abused its discretion in denying the four motions to strike. *See Feldman,* 71 S.W.3d at 749.

The Court of Criminal Appeals repeatedly has addressed challenges for cause against potential jurors who state a belief that police officers are more credible witnesses. *See, e.g.*, *Feldman,* 71 S.W.3d at 747; *Ladd v. State*, 3 S.W.3d 547, 560 (Tex. Crim. App. 1999); *Smith v. State*, 907 S.W.2d 522, 530–31 (Tex. Crim. App. 1995); *Jones v. State*, 982 S.W.2d 386, 389 (Tex. Crim. App. 1998). In doing so, that Court has refused to require complete impartiality. *See Jones*, 982 S.W.2d at 389. This is because it is human nature to give one category of witness a

9

slight edge over another category of witness. *See id.* Jurors cannot be expected to set aside their natural skepticism during trial. *See id.* The Court explained:

> [L]itigants are entitled to jurors who will be genuinely open-minded and persuadable, with no *extreme or absolute* positions regarding the credibility of any witness. . . . [However, c]omplete impartiality cannot be realized as long as human beings are called upon to be jurors. No person sitting as a juror can completely remove his own experiences, beliefs, and values, however hard he may try.

*Id.*

Thus, a potential juror who says that he would tend to believe a police officer more than another witness may serve on a jury. *See Ladd*, 3 S.W.3d at 560. A potential juror who says he might give more credibility to the testimony of a Texas Ranger, likewise, may serve on a jury. *See Smith*, 907 S.W.2d at 531. As long as these veniremembers agree that they can follow the law as explained to them, regardless of their personal beliefs and leanings, it is within the trial court's discretion to find them suitable for jury service and deny the challenge for cause. *See Feldman*, 71 S.W.3d at 747; *Davis v. State*, 329 S.W.3d 798, 811–13 (Tex. Crim. App. 2010) ("The proponent of a challenge for cause has the burden of establishing that the challenge is proper. The proponent does not meet this burden until he has shown that the venire member understood the requirements of the law and could not overcome his or her prejudice well enough to follow the law.") (citations omitted); *cf. Cortez*, 159 S.W.3d at 94 ("An initial 'leaning' is not disqualifying if it represents skepticism rather than an unshakeable conviction.").

None of these potential jurors professed firmly held convictions that police officers are always right or should always be believed. They each followed their statements regarding police officer credibility with assurances that they would not prejudge any witness but would, instead, follow the law as instructed. As a result, the trial court had discretion to determine whether these potential jurors exhibited sufficient bias to substantially impair their ability to apply the law. *See Gardner*, 306 S.W.3d at 295; *Davis*, 329 S.W.3d at 807.

These statements, in the context of the entire voir dire record and all of the individual veniremember's answers, did not demonstrate adequate bias to find that the trial court abused its discretion by denying the motions to challenge for cause. We overrule Simpson's first, second, third, and fourth issues.

### Display of MADD Plaque

In her fifth and sixth issues, Simpson complains that the trial judge refused to remove a small MADD plaque that was leaning against the back wall behind the judge's chair during her DWI trial. Simpson objected to the display of the plaque and requested the trial court remove it. The trial court denied the request.

Simpson obtained agreement from the veniremembers during voir dire that they could see the plaque and believed it was from MADD, though there is no indication that anything else on the plaque was legible from the veniremembers' location in the courtroom. Subsequently, Simpson moved to have the trial judge

11

recuse himself, arguing that he did not appear to be impartial. The motion was denied. Simpson presented another recusal motion to a judge administratively assigned to hear her motion. That motion also was denied: "The motion to recuse is denied, but I would strongly hope that the Judge would do the right thing and take down the plaque." Simpson presents two challenges to these adverse rulings.

## A. Simpson's substantial rights not affected

In her fifth issue, Simpson argues that the trial court erred by refusing to remove the MADD plaque during her DWI trial and that the error violated statutory law and the Code of Judicial Conduct. Simpson contends that the trial judge's impartiality reasonably was in question and his refusal to remove the plaque adversely affected her substantial rights. Even assuming Simpson is correct that the trial court erred by refusing to remove the plaque, we will not reverse Simpson's conviction if the alleged error was harmless. *See* TEX. R. APP. P. 44.2(b); *Sells v. State*, 121 S.W.3d 748, 764–65, 764 n.69 (Tex. Crim. App. 2003).

An error is harmless if it fails to affect a defendant's substantial rights, considering the entire record. TEX. R. APP. P. 44.2(b); *Burnett v. State*, 88 S.W.3d 633, 637 & n.8 (Tex. Crim. App. 2002); *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). A substantial right is not affected if the reviewing court has "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (citation omitted).

If, on the other hand, there is a "grave doubt" that the result was free from the substantial influence of the error, then the defendant's substantial rights were affected. *See Burnett*, 88 S.W.3d at 637–38. "Grave doubt" means that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.*

The law does not place a burden on the defendant to establish harm under Rule 44.2(b). *See Burnett*, 88 S.W.3d at 638. "[S]ome errors may 'defy' harm analysis . . . [meaning that] some errors will not be proven harmless because harm can never be determined due to the lack of data needed for analysis." *Llamas v. State*, 12 S.W.3d 469, 471 (Tex. Crim. App. 2000) (citing *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997)). Thus, if a review of the record results in insufficient data to conduct a harm analysis, the error will not be proven harmless and a reversal will result. *See Llamas v. State*, 991 S.W.2d 64, 68 (Tex. App.—Amarillo 1998), *aff'd*, 12 S.W.3d 469 (Tex. 2000); *Cain*, 947 S.W.2d at 264.

In *Llamas*, the defendant contended that the trial court erred by denying his mandatory right to a severance. *See id.* at 470. The court of appeals determined that there was "no way of knowing . . . if or how the consolidation of the charges impacted the jury's decision" and, based on that conclusion, held that the error defied harm analysis. *Llamas*, 991 S.W.2d at 69–70. The Court of Criminal Appeals disagreed that there was insufficient data on which to conduct the harm

analysis, noting that a reviewing court should consider "everything in the court reporter's record . . . including all the evidence admitted at trial, the closing arguments, and, in this case, the jurors' comments during voir dire" to decide whether the trial court's erroneous decision to deny severance affected a substantial right of the defendant. *Llamas*, 12 S.W.3d at 471; *see also Motilla*, 78 S.W.3d at 355–56 (listing factors to consider in harm analysis, including other evidence, jury instructions, theories of case, closing arguments, voir dire, whether error was emphasized by State, and whether "overwhelming evidence of guilt" exists).

Simpson contends that the record "does not establish any reasonable confidence" that the presence of the MADD plaque "had no effect on the jury's actions." We disagree. Our review of the record, including the voir dire of potential jury members, reveals that the presence of the plaque likely had, at most, only a slight effect and, therefore, was harmless.

Simpson implies that the plaque was an award to the judge from MADD and, as such, constitutes evidence that the judge was aligned with the philosophies of the organization. But the record does not support this conclusion. There is nothing in the record to indicate that the potential jurors could read what was written on the plaque. In fact, the record is silent with regard to the inscription on

14

the plaque. At most, the record shows that it was a small plaque and that the letters "MADD" were legible.

Defense counsel questioned the potential jurors about the plaque, the proper role of the prosecution, and the importance that a trial judge remains neutral. Through this questioning of the venire members, Simpson established that the trial judge's role is to be a neutral and unbiased "referee." The jurors agreed with that characterization:

> DEFENSE: Okay, very good. Let me ask you about Mothers Against Drunk Drivers, an organization like that. Has anybody ever given their time or money to an organization such as MADD or Narcotics Anonymous or things like that?

> [some jurors indicate "yes"]

> DEFENSE: I understand. Okay. With that in mind, this is my last issue. I wanted to know like how you see the different parties here. The government or the state, the prosecutors, they're here to do what?

> JUROR: Prosecute, prove the case.

> DEFENSE: Right. So the judge is the one that's like the referee that calls the balls and strikes. How would you see his role? What is the judge's role suppose[d] to be in a case? Is it fair to side with one side or the other?

> JUROR: No, it's not. He's here to facilitate.

> DEFENSE: Right. Would you say neutral?

> JUROR: Yes.

15

DEFENSE: Unbiased. If you were in this situation you wouldn't want to be anywhere else, right? I have—again, I can't say enough about Judge Harmon's reputation in this building and respect I have for him but judges are suppose[d] to be neutral and we got to have that in a trial like this. . . .

We conclude that this is not a case in which we have inadequate information to weigh the possible effect that the presence of this plaque could have had on the jurors. Given the nature of the voir dire, the small size of the plaque, and that, other than the letters "MADD," it was illegible to the jurors, we have fair assurance that any error of the trial court in leaving the plaque at his bench did not influence the jury against Simpson, or had but a slight effect. *Solomon*, 49 S.W.3d at 365. Accordingly, we conclude that display of the plaque was harmless.

We overrule issue five.

## B.    Reviewing judge did not abuse discretion by denying motion to recuse

Simpson argues in her sixth issue that the judge administratively assigned to hear her recusal motion abused her discretion by denying the motion. The hearing occurred midway through the trial; the judge denied the motion.

### 1.    Standard of review

An order denying a motion to recuse is reviewed under an abuse-of-discretion standard. TEX. R. CIV. P. 18a(j)(1)(A) (West Supp. 2014); *De Leon v. Aguilar*, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004); *Arnold v. State*, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993). The court abuses its discretion only if its ruling

16

is outside the "zone of reasonable disagreement" or fails to apply proper guiding rules and principles. *Kemp v. State*, 846 S.W.2d 289, 306 (Tex. Crim. App. 1992); *Abdygapparova v. State*, 243 S.W.3d 191, 198 (Tex. App.—San Antonio 2007, pet. ref'd). Our review is fact intensive, considering the entire record from the recusal hearing. *See Abdygapparova*, 243 S.W.3d at 198–99 (noting that review of denial of recusal motion entered at beginning of trial cannot include trial judge's subsequent actions during trial); *Roman v. State*, 145 S.W.3d 316, 319 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Absent a clear showing to the contrary, we presume the trial court was neutral and detached. *See Steadman v. State*, 31 S.W.3d 738, 741 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).

### 2. The rules governing recusal

Rule 18b(b) provides that a judge must be recused if "the judge's impartiality might reasonably be questioned" or "the judge has a personal bias or prejudice concerning the subject matter or a party." Tex. R. Civ. P. 18b(b)(1–2). Rule 18b(b)(1) is a general rule requiring that a judge objectively appear to be impartial, which he fails to do if he "harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute." *Gaal v. State*, 332 S.W.3d 448, 453 (Tex. Crim. App. 2011); Tex. R. Civ. P. 18b(b)(1). Rule 18b(b)(2) is more specific. It requires a judge not to have actual,

17

personal bias or prejudice concerning a party or the subject matter of the litigation. TEX. R. CIV. P. 18b(b)(2).

The party seeking recusal must establish that a reasonable person, knowing all the circumstances involved, would have doubts as to the impartiality of the judge. *See Kemp*, 846 S.W.2d at 305; *Abdygapparova*, 243 S.W.3d at 198. The evidence must be sufficient to overcome the presumption of judicial impartiality. *See Kemp*, 846 S.W.2d at 306; *Abdygapparova*, 243 S.W.3d at 198–99. Further, the bias must be "of such nature, and to such extent, as to deny the defendant due process of law." *Kemp*, 846 S.W.2d at 305; *see also Abdygapparova*, 243 S.W.3d at 199 (noting that this is a "high standard").

Recusal generally is not required when the judge is accused of a personal bias based solely on his judicial rulings, remarks or actions. *See Gaal*, 332 S.W.3d at 453–54. However, when the judge's remarks reveal an opinion based on an extra-judicial source (sometimes referred to as "personal" bias), recusal could be warranted. *See id.* In either case, if the comments or actions reveal "such a high degree of favoritism or antagonism as to make fair judgment impossible," then recusal is required. *See id.* (quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147 (1994) (Kennedy, J., concurring)).

18

### 3. Simpson's allegations of bias and partiality

At the hearing, Simpson argued that recusal was proper and that a reasonable person would have doubts about the trial judge's impartiality for three reasons: (1) the MADD plaque displayed during her DWI trial appeared to be an endorsement of that organization by the court; (2) the display of the plaque violated various Canons of Judicial Conduct—Canons 2B, 3B(5), and 4A(1)[2]—all of which concern impartiality and bias; and (3) a previously posted YouTube video that was said to include the judge and discuss the perils of drunk driving evidenced an "improper alignment" with the prosecution. In addition to her general argument that the plaque was improper, she specifically complains that her request to remove the plaque was denied in front of the jury, which she alleges created an appearance of partiality.

During the recusal hearing, Simpson recounted her requests to the trial judge to remove the plaque, as well as his refusal to do so. She offered as evidence photographs showing the location and general visibility of the plaque to the jurors.

---

[2]      Canon 2B: "A judge shall not allow any relationship to influence judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others . . . ." Canon 3B(5): "A judge shall perform judicial duties without bias or prejudice." Canon 4A(1): "A judge shall conduct all of the judge's extra-judicial activities so that they do not: cast reasonable doubt on the judge's capacity to act impartially as a judge . . . ." TEX. CODE JUD. CONDUCT, Canons 2B, 3B(5), and 4A(1), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B (West 2013).

Then she summarized the veniremembers' answers to her voir dire questions concerning the MADD plaque.

The State countered that the plaque was not very visible. Moreover, none of the potential jurors indicated that they questioned the trial judge's impartiality; they simply acknowledged that they noticed the plaque.

### 4. Bias and partiality not sufficiently shown to find abuse of discretion by recusal judge

From the arguments and evidence presented at the recusal hearing, it is clear that Simpson did not claim to have been treated unfairly by the trial judge in any aspect of her case other than by his refusal to remove the plaque and the existence of the YouTube video. Her complaint is limited to these two items, which she contends demonstrate bias and partiality.

Simpson's argument that the judge's ruling—made in front of the jury—to deny her request to remove the plaque demonstrates partiality is without merit. Judicial rulings almost always are inadequate to establish bias. *See Gaal*, 332 S.W.3d at 454 ("Generally, though, recusal is not required when based solely on judicial rulings, remarks or actions. These acts almost never constitute a valid basis for a bias or partiality motion.") (citation omitted); *Abdygapparova*, 243 S.W.3d at 198 (holding that claims of bias and prejudice based on judicial rulings must show "deep-seated favoritism or antagonism that would make fair judgment impossible" and deny a party due process of law; noting that the rulings would have to

20

somehow be *wrongful* or *inappropriate*, not just unfavorable to the complaining party) (citation omitted).

A related argument—that the presence of the plaque in the courtroom evidenced support for MADD—alleges an extra-judicial source of bias and partiality. We find this claim to be analogous to cases in which trial courts have made extra-judicial statements regarding a category of offense or punishment. *See Rosas v. State*, 76 S.W.3d 771, 775 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Chastain v. State*, 667 S.W.2d 791, 794 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd).

In *Rosas*, this Court held that the recusal judge did not abuse his discretion by denying the recusal motion of a defendant charged with sexual assault. 76 S.W.3d at 775. The defendant alleged that the judge had a bias in favor of the prosecution in sex-abuse cases, had been a member of the Children's Assessment Center's judicial counsel, and told the jury during voir dire that she "hates such cases." *Id.* The trial judge had stated on the record:

> Nobody likes these cases. I don't like standing up here and reading these allegations to you. I don't even like reading them. Nobody thinks that they want to sit and listen to this type of case. . . . [T]he Prosecutor doesn't love prosecuting these cases. The Defense probably doesn't love defending these cases. But here we are.

*Id.* We held that the recusal judge did not abuse his discretion when he denied the recusal motion because these statements did not exhibit hostility towards the

defendant sufficient to deny him due process of law. *See id.* These comments were about sexual assault cases as a general category of offense—unrelated to the question whether this particular defendant was guilty of sexual assault. *See id.* Further, the allegation that the judge had an improper affiliation with Children's Assessment Center did not require recusal because ethical violations, alone, do not mandate recusal of a trial judge. *See id.*; *Gaal*, 332 S.W.3d at 453–54.

Our sister court, likewise, has held that a judge's extra-judicial expression of personal views will not require reversal. *Chastain*, 667 S.W.2d at 796. There, the judge made statements on a television program that the death penalty should be invoked more often if it is to be an effective deterrent. *See id.* at 794. The program aired after some, but not all, of the jurors had been selected in Chastain's case, which involved a possible death sentence. *See id.* The defendant argued that the extra-judicial statements required the trial judge be recused. *See id.* at 796. The appellate court disagreed:

> The judge merely stated his personal views on the death penalty and its effect as a deterrent. He made no statements which indicated that he believed that appellant should receive the death penalty or that he would encourage this jury to [i]nvoke such a penalty. . . . It is presumed that a judge will base his judgment upon the facts as they are developed at the trial.

*Id.*

We conclude that the display of the MADD plaque is analogous to the judicial comments made in *Rosas* and *Chastain*. While the display of the plaque

22

could be viewed as evidence the trial judge dislikes drunk driving, it was not a comment on this particular defendant's guilt or innocence and, therefore, did not demonstrate bias against Simpson. *See Rosas*, 76 S.W.3d at 775.

Simpson's evidence fails to overcome the presumption that the trial court was unbiased in presiding over her trial. *See Steadman*, 31 S.W.3d at 741. Further, she has not established judicial bias extreme enough to have deprived her of due process of law. *See Rosas*, 76 S.W.3d at 774.

Simpson's alternative argument that the trial court's actions violated the Code of Judicial Conduct also is unavailing because such violations, even if proven, will not support recusal without more. *See Gaal*, 332 S.W.3d at 455.

Given the abuse-of-discretion standard, the question before this Court is not whether it is advisable to display a MADD plaque in a courtroom during a DWI trial or whether, in our view, the trial judge should have obliged defense counsel's request to take it down. Instead—when reviewing a denial of a motion to recuse— the issues before the appellate court are whether the reviewing judge (1) followed appropriate guiding rules and principles to analyze the recusal motion, and (2) reached a decision, based on information presented at the hearing, that was within the "zone of reasonable disagreement." *Kemp*, 846 S.W.2d at 306; *Abdygapparova*, 243 S.W.3d at 197–98. To the extent the judge's refusal to remove the plaque supports recusal, it falls within the zone of reasonable

disagreement and, thus, within the reviewing judge's discretion whether to deny the motion. *Kemp*, 846 S.W.2d at 306; *Abdygapparova*, 243 S.W.3d at 197–98.

Finally, we reject Simpson's argument that the judge's statement about drunk driving in a YouTube video required his recusal. Simpson made the YouTube video available to the recusal judge to review, but never played it or offered it into evidence. The result is that it is not before us and, without it, we cannot know the exact statements made by the trial judge or their context.

We overrule Simpson's sixth issue.

### Conclusion

The judgment of the trial court is affirmed.


Harvey Brown
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

Justice Sharp, dissenting.

Do not publish. TEX. R. APP. P. 47.2(b).